United States District Court
for the
Northern District of Georgia
(Atlanta Division)

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL - 3 2014

JAMES N. HATTEN, Clerk
By:

WBH

Jason Joseph Clark,
Tamah Jada Clark (both on their
own behalf and that of "Baby" Clark),

**Plaintiffs**

v.

DANIEL J. PORTER, NATHAN DEAL,
THOMAS DAVIS JR., SAM OLENS,
DAVID CAVENDAR, BRIAN OWENS,
STANLEY WILLIAMS, D'ANNA K.
LIBER, CHARLES M. WALTERS,
BUTCH CONWAY, TRACY GOODBAR,
JANE DOE (all in official and individual
capacities); and **GEORGIA DEPARTMENT
OF CORRECTIONS, THE COUNTY OF
GWINNETT, THE STATE OF GEORGIA,**

**Defendants**

Civil Action No. 1:14-CV-2128

## ORIGINAL COMPLAINT

Aliens' Tort Action for Violation of Law of Nations and International Treaty:

Complaint for Injunctive Relief and Monetary Compensation

*Note: All references to case law and statutes posterior to the ratification of the 14th*

*Amendment to the U.S. Constitution are for referential purposes only, to facilitate*

1

*the communication of the message and principals contained herein; and are under no circumstances to be construed in any manner that would impose presumed obligations upon Plaintiffs or inhibit their natural and unalienable rights.*

**Statement of Jurisdiction & Venue:**

Plaintiffs are Floridian-American foreign nationals [8 U.S.C. 1101(a) (21)], under the organic, natural Constitution of the Republic of the United States of America. Plaintiffs are nonresident nonimmigrant alien (Florida) nationals with respect to the *current* United States and are domiciled without the same. Plaintiffs are not citizens of the United States.

Defendants are all citizens of the United States [8 U.S.C. 1101(a) (22)] residing in the state of Georgia. The majority of the events for which this action is brought occurred in the state of Georgia. This court has subject-matter jurisdiction, as well as personal jurisdiction over Defendants.

**Cause of Action:**

This complaint is being brought as an aliens' tort action for violations of the *law of nations* and violations of an International Treaty of the United States (namely, the organic Constitution of the United States of America Republic and the Bill of Rights contained therein). 'Exhibit A' is hereby made part of this pleading for all purposes.

**Statement of Claims:**

Please note: the violations of the law of nations are numbered using centered roman numerals (i.e. I, II, III, etc.). The violations under the organic Constitution of the United States republic are numbered using Arabic numerals (i.e. 1), 2), 3), etc.), followed by the article violated or the article [IX] pursuant to which violations of other unalienable and constitutionally protected rights have been violated—also deemed violations of/under the Constitution.

**I.**

***Kidnapping.*** In September 2009, plaintiff Jason Joseph Clark was arrested, detained, and abducted by the GWINNETT COUNTY POLICE DEPARTMENT, under the direction of CHARLES M. WALTERS.

1) <u>Violation of Article IV:</u> Plaintiff Jason Joseph Clark and his property were unreasonably searched and seized, without a proper warrant.

2) <u>Pursuant Article IX:</u> Though not specifically stated, kidnapping is a violation of plaintiff Jason Joseph Clark's unalienable right to not be kidnapped.

3) <u>Violation of Article V:</u> Plaintiff Jason Joseph Clark was held to answer for an infamous crime without a presentment or indictment of a proper Grand Jury.

4) <u>Violation of Article VI:</u> Plaintiff Jason Joseph Clark was not informed of the *nature* and cause of the accusations against him.

5) <u>Violation of Article V:</u> Plaintiff Jason Joseph Clark was deprived of liberty and property without due process of law.

6) <u>Violation of Article VI:</u> Plaintiff Jason Joseph Clark was held in GWINNETT COUNTY DETENTION CENTER for 11 months following his unlawful arrest, before going to "trial". His right to a public and speedy trial by an impartial jury (of his peers) was violated.

7) <u>Violation of Article VIII</u>: Plaintiff Jason Joseph Clark was held in GWINNETT COUNTY DETENTION CENTER for 11 months with a bail set at 200,000 (USD). The bail was excessive.

8) <u>Violation of Article VIII</u>: Plaintiff Jason Joseph Clark was sentenced to 50 years in prison [for pretended offenses], which is cruel and unusual.

## II.

***Cruel, Inhumane, Degrading Treatment.*** On a daily basis, for approximately 4 years, plaintiff Jason Joseph Clark—in detention of the GEORGIA DEPARTMENT OF CORRECTIONS at SMITH STATE PRISON under indirect supervision of BRIAN OWENS and under the direct supervision of STANLEY WILLIAMS—is subjected to extreme, harsh conditions that are inhumane and degrading, to include: unsanitary environment, unbearable heat and/or freezing temperatures, inadequate clothing, insufficient meals, physical restraint, violent altercations, armed prisoners and prison personnel, constant harassment to include physical and verbal assault from prison personnel, and many other life-threatening conditions.

9) <u>Pursuant Article IX:</u> Though not enumerated, plaintiff Jason Joseph Clark's being subjected to cruel, inhuman, and degrading treatment on a daily basis is in violation of his unalienable right to not be treated in a cruel, inhumane, or degrading manner.

### III.

***Peonage.*** Plaintiff Jason Joseph Clark is and has been restrained of his liberty, compelled to labor in liquidation of a pretended/invalid debt imposed upon him by the STATE OF GEORGIA under chief executive NATHAN DEAL.

10) <u>Pursuant Article IX:</u> Though not specifically stated, peonage is a violation of plaintiff Jason Joseph Clark's unalienable right to not be subjected to peonage.

### IV.

***Involuntary Servitude.*** The aforementioned enslavement of foreign national/plaintiff Jason Joseph Clark (in number III above) is involuntary.

11) <u>Violation of Article XIII:</u> Jason Joseph Clark's involuntary enslavement/servitude is in violation of Article XIII.

### V.

***Human Trafficking.*** Plaintiff Jason Joseph Clark is being commercially exploited under conditions of forced labor and restraint of his movement.

12) <u>Pursuant Article IX:</u> Though not specifically stated, human trafficking and commercial exploitation are a violation of plaintiff Jason Joseph Clark's unalienable right to not be subjected to human trafficking and commercial exploitation.

### VI.

***War crimes against civilians.*** Plaintiff Jason Joseph Clark was transported "beyond the seas" to be tried in admiralty at THE GWINNETT COUNTY SUPERIOR COURT and then sent to SMITH STATE PRISON slave labor camp.

13) <u>Pursuant Article IX:</u> Though not specifically stated, war crimes against him as a non-combatant civilian are a violation of plaintiff Jason

Joseph Clark's unalienable right to not be subjected to war crimes as a non-combatant civilian.

## VII.

***Kidnapping (two counts).*** In August 2010, plaintiff Tamah Jada Clark and Plaintiffs' small (then one-year-old) child, "Baby" Clark, were unlawfully arrested and abducted from Florida by TRACY GOODBAR and a second unidentified female employee, ("JANE DOE"), of the GWINNETT COUNTY DISTRICT ATTORNEY'S OFFICE, under the orders of DANIEL J.PORTER.

14) <u>Pursuant Article IX:</u> Though not specifically stated, kidnapping is a violation of plaintiff Tamah Jada Clark's unalienable right to not be kidnapped.

15) <u>Pursuant Article IX:</u> Though not specifically stated, kidnapping is a violation of "Baby" Clark's unalienable right to not be kidnapped.

16) <u>Violation of Article IV:</u> Plaintiff Tamah Jada Clark's unalienable right to be secure in all of her effects (person and property) against unreasonable search and seizure was violated.

17) <u>Violation of Article IV:</u> "Baby" Clark's unalienable right to be secure in all of his effects (person and property) against unreasonable search and seizure was violated.

## VIII.

***Cruel, Inhumane, Degrading Treatment.*** Directly following the event of the proceeding count number VI above, (less than 24 hours later); upon arrival to the GWINNETT COUNTY DETENTION CENTER IN in Georgia, plaintiff Tamah Jada Clark (unarmed) was tackled to the ground while holding Plaintiffs' infant child, by five male, armed deputies of the GWINNETT COUNTY SHERIFF'S DEPARTMENT, under the authority of BUTCH CONWAY and by order of DANIEL J. PORTER. Tamah Jada Clark was then unlawfully arrested a second time and confined by GWINNETT COUNTY sheriff's deputies (without even a pretended trial or warrant) and placed in an all-male Suicide Ward at GWINNETT COUNTY DETENTION CENTER under the orders of DANIEL J. PORTER.

18) <u>Pursuant Article IX:</u> Though not specifically stated, being physically tackled to the ground by armed men is a violation of plaintiff Tamah Jada Clark's unalienable right to not be tackled to the ground by armed men.

19) <u>Pursuant Article IX:</u> Though not specifically stated, being physically tackled to the ground is a violation of "Baby" Clark's unalienable right to not be tackled to the ground by armed men.

20) <u>Violation of Article V:</u> Plaintiff Tamah Jada Clark was deprived of liberty and child without due process of law.

21) <u>Pursuant Article IX:</u> Though not specifically stated, to be unlawfully arrested and confined is a violation of plaintiff Tamah Jada Clark's unalienable right to not be unlawfully arrested and confined without a proper warrant.

## IX.

***Child Abduction.*** Immediately thereafter (following count VI above), Plaintiffs' small child was stolen from plaintiff Tamah Jada Clark by the GWINNETT COUNTY SHERIFF'S deputies mentioned above and given to GWINNETT

COUNTY CHILD PROTECTIVE SERVICES under the authority of D'ANNA K. LIBER, under the orders of DANIEL J. PORTER and BUTCH CONWAY.

22) <u>Pursuant Article IX:</u> Though not specifically stated, child abduction is a violation of Plaintiff's unalienable right to not have their child abducted.

23) <u>Pursuant Article IX:</u> Though not specifically stated, abduction is a violation of "Baby" Clark's unalienable right to not be abducted.

**Conclusion and Prayer for Relief:**

Defendants have committed grave offenses—against Freemen (Plaintiffs) with *natural* and unalienable Rights recognizable under the *law of nations* and the Bill of Rights of the organic, natural Constitution of the Republic of the United States of America— of which the mental and emotional damages are irreparable.

<u>Plaintiffs demand relief as follows:</u>

1) Injunctive relief, whereby plaintiff Jason Joseph Clark be immediately released from detention by STANLEY WILLIAMS and the GEORGIA DEPARTMENT OF CORRECTIONS.

2) Monetary compensation and relief in the amount of 10,000,000,000 USD (without preference as to how it is to be divided amongst Defendants).

3) That all notions and records suggesting U.S. citizenship or Georgia residence of Plaintiffs and "Baby" Clark be permanently and immediately removed from the STATE OF GEORGIA records, to include: driver's license, voter registration, birth certificate, vehicle registration, marriage license and all other records that may exist that could potentially create the presumption of political or commercial ties of any kind between Plaintiffs and the STATE OF GEORGIA.

ON BEHALF OF PLAINTIFFS,

*[signatures]*

Tamah Jada Clark
Mailing Address:
6901-A N. 9th Ave. #429
Pensacola Florida [32504]
Email: TamahJClark@gmail.com
Ph: (850) 51206642

Monday, June 30, 2014

Exhibit A

**Memorandum of Law**

*"To exercise power costs effort and demands courage. That is why so many fail to assert rights to which they are perfectly entitled—because a right is a kind of power but they are too lazy or too cowardly to exercise it. The virtues which cloak these faults are called patience and forbearance."* *–(Friedrich Nietzsche)*

\*Important Notices\*:

- The contents of 'Exhibit A' form part of the pleading to which it is attached, for <u>all</u> purposes. [Federal Rules of Civil Procedure 10(c)]
- All court cases and other legal references must be read and interpreted in their respective historical context.
- All references to case law and statutes—especially those posterior to the *War Between the States*—are for referential purposes and shall not be construed in any manner whatsoever that may impose obligations of any kind upon the natural and unalienable rights of Plaintiffs.

A. <u>"Citizen of the United States" Defined.</u>

Prior to the ratification of the 14th amendment to the U.S. Constitution, there was no legal definition of the term "citizen of the United States"[1]; whereas United States citizenship theretofore implied citizenship in one of the States[2] of the organic American Union, as it existed before the *War Between the States (1861-1865)*—also known as the *American Civil War*.[3]

B. <u>Two Classes of Citizenship.</u>

Under the provisions of the 14th amendment, the then-U.S. Congress created a "second class" of citizenship[4], which established a **legal status** for the newly freed

---

[1] By the original [organic] Constitution, citizenship in the United States was a consequence of citizenship in a state. By this clause [U.S. Const. amend. XIV, §1] this order of things is reversed. Citizenship in the United States is defined; it is made independent of citizenship in a state, and citizenship in a state is a result of citizenship in the United States. So that a person born or naturalized in the United States, and subject to its jurisdiction, is, without reference to state constitutions or laws, entitled to all the privileges and immunities secured by the Constitution of the United States to citizens thereof. U.S. v. Hall, (1871) 3 Chicago Leg. N. 260, 26 Fed. Cas. No. 15,282.

[2] "A state [of the organic American Union] does not owe its origin to the Government of the United States, in the highest or in any of its branches. It was in existence before it. It derives its authority from the same pure and sacred source as itself: The voluntary and deliberate choice of the people". Chisholm v. Georgia, 2 Dall. (U.S.) 419 (Dall.) (1794).

[3] Prior to the adoption of this [fourteenth] amendment, strictly speaking, there were no citizens of the United States, but only of some one of them. Congress had the power "to establish an uniform rule of naturalization," but not the power to make a naturalized alien a citizen of any state. But the states generally provided that such persons might, on sufficient residence therein, become citizens thereof, and then the courts held, *ab convenienti*, rather than otherwise, that they became *ipso facto* citizens of the United States. But the amendment declares the law positively on the subject, and reverses this order of procedure, by making citizenship of a state consequent on citizenship of the United States; for, having declared what persons are citizens of the United States, it does not stop there, and leave it in the power of a state to exclude any such person who may reside therein from its citizenship, but adds, "and such persons shall also be citizens of the state wherein they reside." Sharon v. Hill, (1885) 26 Fed. 343.

[4] "The term resident and citizen of the United States is distinguished from a Citizen of one of the several states, in that the former is a special class of citizen created by Congress." U.S. v. Anthony 24 Fed. 829 (1873)

2

slaves[5][6][7] and other *persons of color*[8] that was to come under the direct jurisdiction of the U.S. Federal Government[9][10][11], irrespective of said persons' choice of *residence*[12] (within or without a state of the Union).

---

[5] The existence of laws in the States where the newly emancipated negroes resided, which discriminated with gross injustice and hardship against them as a class, was the evil to be remedied by this clause, and by it such laws are forbidden. Slaughter-House Cases, 16 Wall. 36 (1872).

[6] Was it the purpose of the fourteenth amendment, by the simple declaration that no State should make or enforce any law which shall abridge the privileges and immunities of *citizens of the United States*, to transfer the security and protection of all the civil rights which we have mentioned, from the States to the Federal government? And where it is declared that Congress shall have the power to enforce that article was intended to bring within the power of Congress the entire domain of civil rights heretofore belonging exclusively to the States? [...] We are convinced that no such results were intended by the Congress which proposed these amendments, nor by the legislatures of the States which ratified them. Slaughter-House Cases, 16 Wall. 36 (1872).

[7] The slaves were set free by presidential proclamation under War Powers of President Abraham Lincoln in his role as Commander in Chief of the Military. The slaves being set free was under martial law and times of war, not peace.

[8] "Before our Revolution, all free persons born within the dominions of the king of Great Britain whatever their color or complexion, were native-born British subjects; those born out of his allegiance were aliens." "Upon the Revolution, no other change took place in the law of North Carolina than was consequent upon the transition from a colony dependent on an European king to a free and sovereign state." "British subjects in north Carolina become North Carolina freemen; and all free persons born within the state are born citizens of the state." State v. Manuel (1838) 4 Dev. & b.20, 24-26.

[9] We have in our political system a Government of the United States and a government of each of the several states. Each is distinct from the other and each has citizens of its own [...]. U.S. v. Cruikshank, 92 U.S. 542, 23 L. Ed. 588.

[10] We have in our political system a government of the United States and a government of each of the several States. Each one of these governments is distinct from the others, and each has citizens of its own who owe it allegiance, and whose rights, within its jurisdiction it must protect. The same person may be at the same time a citizen of the United States and a citizen of a State, but his rights of citizenship under one of these governments will be different from those he has under the other. Slaughter-House Cases, 16 Wall. 36 (1872).

[11] "The United States Government is a foreign corporation with respect to a state." [N.Y. v. re Merriam 36 N.E. 505, 141 N.Y. 479, affirmed 16 S. Ct. 1073, 41 L. Ed. @87]. [19 Corpus Juris Secundum (C.J.S.), Corporations, § 884].

[12] United States v. Northwestern Express, Stage & Transportation Company: 164 U.S 686, 688 (1897)
"As in case of the authority of the United States over its absent citizens (Blackmer v. United States, 284 U.S. 421), the authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state." Milliken v. Meyer, 311 U.S. 457 (1940)

C. Two Classes of Rights.

The aforementioned "U.S. persons" have *voluntarily* agreed to partake of statutory civil rights legislated unto them by the U.S. Government, provided for by the clausal provisions of the 14th amendment to the U.S. Constitution, as set forth by the Thirty-Ninth U.S. Congress, stating that: "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States. [...] The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."[14] In contradistinction, the rights of persons unaffected by the Amendment were not altered[15].

D. The United [New] States of America.

Through the systematic implementation of an institutionalized matrix of contractual nexus, overtime—most central North Americans have abandoned their

---

[14] Fourteenth Amendment of the United States Constitution

[15] "The expression, Citizen of a State, is carefully omitted here. In Article IV, Section 2, Clause 1, of the Constitution of the United States, it had been already provided that 'the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.' The rights of Citizens of the States [1] (under Article IV, Section 2, Clause 1) and of citizens of the United States (under The Fourteenth Amendment) are each guarded by these different provisions. That these rights are separate and distinct, was held in the Slaughterhouse Cases, recently decided by the Supreme court. The rights of Citizens of the State, as such, are not under consideration in the Fourteenth Amendment. They stand as they did before the adoption of the Fourteenth Amendment, and are fully guaranteed by other provisions. [2]" United States v. Anthony: 24 Fed. Cas. 829, 830 (Case No. 14,459) (1873).

4

*de jure* governments and nationality connected thereto, through ignorance—and have, in their place, resurrected new states composed of rebellious insurgents; whilst conscious men and women take silent judicial and administrative notice.

E. The Supreme Law of the Land.

Though some Americans have been disfranchised and are therefore without representation in the U.S. Congress or in the subservient State governments[16], the organic Constitution remains intact, as does the Bill of Rights found therein. Where there is conflict between the organic Constitution and current statutory law (and/or the actions of public officers), the Constitution must prevail. [17][18][19][20]

F. Conclusion: The Law of Nations Violated.

---

[16] When a change of government takes place, [...] the old form is dissolved. Those who lived under it, and did not chuse to become members of the new, had a right to refuse their allegiance to it, and to retire elsewhere [e.g. change their legal *domicile*]. By being a part of the society subject to the old government, they had not entered into any engagement to become subject to any new form the majority might think proper to adopt. That the majority shall prevail, is a rule posterior to the formation of government, and results from it. It is not a rule binding upon mankind in their natural state. There, every man is independent of all laws, except those prescribed by nature. He is not bound by any institutions formed by his fellow-men without his consent. Crude v. Neale, 2 N.C. (1796) 2 S.E. 70.

[17] This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land" (Article 6, U.S. Constitution—1787)

[18] "If the provisions of the Constitution can be set aside by an act of Congress, where is the course of usurpation to end?". Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 158 U.S. 601 (1895)

[19] "Every member of a State legislature, and every executive and judicial officer of a State, shall, before he proceeds to execute the duties of his office, take an oath in the following form, to wit: 'I, A B, do solemnly swear that I will support the Constitution of the United States.'" [4 U.S.C 101][19].

[20] "All laws which are repugnant to the Constitution are null and void." Marbury vs. Madison, 5 US (2 Cranch) 137, 174, 176, (1803)

Any violation perpetrated by citizens of the United States against the unalienable rights of Floridian-American men and women, which are rights protected under the organic Constitution for the United States republic, is a violation of the law of nations, and the Constitution itself[21].

The U.S. Supreme Court has held that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. **They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers."** *(Emphasis added)*. Elliott v. Lessee of Piersol, 26 U.S. 1 Pet. 328 328 (1828).

---

[21] "When rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda vs. Arizona, 384 US 436 p. 491.