FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 1 7 2014

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF GEORGIA
### (ATLANTA DIVISION)

| | |
|---|---|
| Jason Joseph Clark,<br>Tamah Jada Clark (both on their<br>own behalf and that of "Baby Clark"),<br><br>**Plaintiffs**<br><br>v.<br><br>**DANIEL J. PORTER, NATHAN DEAL,**<br>**THOMAS DAVIS JR., SAM OLENS,**<br>**DAVID CAVENDAR, BRIAN OWENS,**<br>**STANLEY WILLIAMS, D'ANNA K.**<br>**LIBER, CHARLES M. WALTERS,**<br>**BUTCH CONWAY, TRACY GOODBAR,**<br>**JANE DOE #1, PATRICIA GRAY, BRIAN**<br>**BELLAMY, RONALD SPENCE, JANE**<br>**DOE #2, JOHN DOE, BRIAN KEMP**<br>(all in personal and official capacities);<br>and **GEORGIA DEPARTMENT OF**<br>**CORRECTIONS, GWINNETT COUNTY,**<br>**GWINNETT COUNTY POLICE**<br>**DEPARTMENT, PELHAM POLICE**<br>**DEPARTMENT, CAMILA POLICE**<br>**DEPARTMENT, MITCHELL COUNTY,**<br>**STATE OF GEORGIA,**<br><br>**Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORIGINAL COMPLAINT [Amended 7/15/14]

ALIENS' (CIVIL) TORT ACTION FOR VIOLATION OF LAW OF NATIONS & TREATY OF THE UNITED STATES [28 U.S.C. § 1350]; AND CIVIL ACTION ARISING UNDER U.S. CONSTITUTION & LAWS [28 U.S.C. § 1331]: COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY COMPENSATION

*"The fact is that the average man's love of liberty is nine-tenths imaginary, exactly like his love of sense, justice and truth. He is not actually happy when free; he is uncomfortable, a bit alarmed, and intolerably lonely. Liberty is not a thing for the great masses of men. It is the exclusive possession of a small and disreputable minority, like knowledge, courage and honor. It takes a special sort of man to understand and enjoy liberty — and he is usually an outlaw in democratic societies." –(Henry Louis Mencken)*

Note: All references to case law and statutes posterior to the ratification of the 14th Amendment to the U.S. Constitution are for referential purposes only, to facilitate the communication of the message and principals contained herein; and are under no circumstances to be construed in any manner that would impose presumed obligations upon Plaintiffs or inhibit their natural and unalienable rights, as that is not the intent or purpose of their usage.[1]

---

[1] "Construing Pleadings. Pleadings must be construed so as to do justice." Federal Rules of Civil Procedure 8 (e).

## STATEMENT OF JURISDICTION & VENUE:

Plaintiffs are Floridian-American foreign nationals[2], under the organic, natural Constitution of the **REPUBLIC**[3] of the United States of America. Plaintiffs are neither citizens nor nationals of the United States, and are not U.S. persons [26 U.S.C. § 7701 (a) (30)].

Plaintiffs are _nonresident_, _nonimmigrant_ [8 U.S.C. § 1101 (a) (15) (B)], _alien_ [8 U.S.C. 1101 § (a) (3)], Florida nationals—and specifically do not form part of the present _de facto_ body politic _occupying_ the territory[4] and have no allegiance to

---

[2] "The term 'national' means a person owing permanent allegiance to a state." 8 U.S.C. § 1101 (a)(21).

[3] "The first question that offers itself is, whether the general form and aspect of the [Union's] government be strictly republican. It is evident that no other form would be reconcilable with the genius of the people of America; with the fundamental principles of the [American] Revolution; or with that honorable determination which animates every votary of freedom, to rest all our political experiments on the capacity of mankind for self-government. If the plan of the convention, therefore, be found to depart from the republican character, its advocates must abandon it as no longer defensible. What, then, are the distinctive characters of the republican form? [...]If we resort for a criterion to the different principles on which different forms of government are established, we may define a republic to be, or at least may bestow that name on, a government which derives all its powers directly or indirectly from the great body of the people, and is administered by persons holding their offices during pleasure, for a limited period, or during good behavior. It is ESSENTIAL to such a government that it be derived from the great body of the society, not from an inconsiderable proportion, or a favored class of it; otherwise a handful of tyrannical nobles, exercising their oppressions by a delegation of their powers, might aspire to the rank of republicans, and claim for their government the honorable title of republic. It is SUFFICIENT for such a government that the persons administering it be appointed, either directly or indirectly, by the people; and that they hold their appointments by either of the tenures just specified; otherwise every government in the United States, as well as every other popular government that has been or can be well organized or well executed, would be degraded from the republican character." Federalist Paper No. 39, _The Conformity of the Plan to Republican Principles_, by James Madison (1788).

[4] "Every citizen of the United States who is at least eighteen years of age and who is a permanent resident of the state, if registered as provided by law, shall be an elector of the county where registered." Florida Constitution, Article VI, Section 2. The Florida Voter Registration Application further specifies that "To register in Florida, you

said occupants—with respect to the *current* United States and are domiciled[5] [6] without the same. We, the Plaintiffs, do not support the current U.S. system or the Movement[7] of which it appears to form part, but are nonetheless at peace with the United States and are to be considered non-hostile, non-belligerent *alien friends*.

Defendants are all citizens of the United States [8 U.S.C. 1101(a) (22)] residing in the state of Georgia. The majority of the events for which this action is brought occurred in the STATE OF GEORGIA. This court has subject-matter jurisdiction, as well as personal jurisdiction over Defendants.

## CAUSE OF ACTION:

This complaint is being brought as an aliens' civil tort action for violations of the,

---

must be: a U.S. citizen, a Florida resident, at least 18 years old [...]" and if one does **"not meet any ONE of these requirements, you are not eligible to register"**. State of Florida Voter Registration Application (eff. 10/2013). Authors' Note: United States citizenship and state residence are mandatory to vote within that body politic, which is in direct opposition to the intent of the *de jure* body politic that authored the State of Florida's founding charter (constitution) in 1839, later being admitted to the Union in 1845, under the United States Republic; therefore, Plaintiffs are unable to politically associate with those occupants.

[5] "[R]ights of personal status, according to Common law, depend upon domicil[.]" A Treatise on The Conflict of Laws or Private International Law (pg. 6) by Joseph Henry Beale (1916).

[6] "CAPACITY TO SUE OR BE SUED. Capacity to sue or be sued is determined [...] for an individual who is not acting in a representative capacity, by the law of the individual's domicile[.]" Federal Rules of Civil Procedure 17 (b) (1).

[7] "The term "world communism" means a revolutionary movement, the purpose of which is to establish eventually a Communist totalitarian dictatorship in any or all of the countries of the world through the medium of an internationally coordinated Communist political movement." 8 U.S.C. 1101 (a) (40).

*law of nations* (to include other United Nations Conventions to which the United States is a signatory) and violations of the Universal Declaration of Human Rights (UDHR); as well as for violations of the organic Constitution of the United States of America Republic (and the Bill of Rights contained therein).

Plaintiffs are not aware of the specific protocol required for enforcing the observance of constitutionally-protected rights under the organic Constitution of the U.S. Republic; but, hereby certify to the Court that the claims contained herein, *"and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"*, [Federal Rules of Civil Procedure 11(b)(2)]. 'Exhibit A' is hereby made part of this pleading for all Purposes [Federal Rules of Civil Procedure 10(c)].[8]

**STATEMENT OF CLAIMS:**

The following violations have been committed by citizens of the United States against a man, woman, [and child], (e.g. Plaintiffs), having unalienable rights

---

[8]" [...] A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Federal Rules of Civil Procedure 10(c)

protected under the law of nations and the Universal Declaration of Human Rights, and the organic U.S. Constitution:

## I.

In September 2009, plaintiff Jason Joseph Clark was arrested, detained, and abducted by the GWINNETT COUNTY POLICE DEPARTMENT, under the direction of CHARLES M. WALTERS. The plaintiffs' property (and person)—to include, cellular phone, money, clothing, shoes, collectible sports memorabilia, his freedom, etc.—were taken at that time and have not since been returned. At the time of his abduction, he was publicly pounced on by a gang of armed police officers of the GWINNETT COUNTY POLICE DEPARTMENT, in a degrading and defamatory manner; and hauled off to the GWINNETT COUNTY DETENTION CENTER where he remained for 11 months without a trial.

1) Violation of UDHR, Article 17: Plaintiff Jason Joseph Clark was arbitrarily deprived of his property.

2) <u>Violation of UDHR, Article 12:</u> Plaintiff Jason Joseph Clark was subjected to arbitrary interference of his privacy, family, and home, as well as attacks upon his honour and reputation.

3) <u>Violation of UDHR, Article 9:</u> Plaintiff Jason Joseph Clark was subjected to arbitrary arrest and detention.

4) <u>Violation of U.S. Constitution, Article IV:</u> Plaintiff Jason Joseph Clark and his property were unreasonably searched and seized, without a proper warrant.

5) <u>Violation of UDHR, Article 30:</u> Kidnapping and abduction, though not specifically stated, are violations of plaintiff Jason Joseph Clark's international human right to not be kidnapped or abducted.

6) <u>Violation of U.S. Constitution, Article IX:</u> Though not specifically stated, kidnapping is a violation of plaintiff Jason Joseph Clark's unalienable right to not be kidnapped.

7) <u>Violation of UDHR, Article 11:</u> Plaintiff Jason Joseph Clark was charged
with a penal offence, but was denied his right to be presumed innocent until
proven guilty in a public trial, as well as denied all the guarantees necessary
for his defence; such as: proper counsel, access to communication with
family, the opportunity to bring his cause before a judge, the right to
confront his accuser, the right to be informed of the nature of the charges
against him, etc.

8) <u>Violation of U.S. Constitution, Article V:</u> Plaintiff Jason Joseph Clark was
held to answer for an infamous crime without a presentment or indictment of
a proper Grand Jury.

9) <u>Violation of U.S. Constitution, Article VI:</u> Plaintiff Jason Joseph Clark was
not informed of the *nature* and cause of the accusations against him.

10)    <u>Violation of U.S. Constitution, Article V:</u> Plaintiff Jason Joseph Clark
was deprived of liberty and property without due process of law.

11)     Violation of UDHR, Article 10: Plaintiff Jason Joseph Clark was not

given a fair and public hearing by an independent and impartial tribunal. The

STATE OF GEORGIA was his accuser and the employer of all public

officials involved (i.e. police officers, judges, legal counsel, etc.), which

created an obvious and very apparent conflict of interest that made it

impossible for plaintiff to receive justice once he was finally granted the

opportunity for a trial, 11 months after being imprisoned. His bail was set at

$200,000 (USD), which made it impossible for his family and friends to pay

the ransom for his release.

12)     Violation of U.S. Constitution, Article VI: Plaintiff Jason Joseph

Clark was held in GWINNETT COUNTY DETENTION CENTER for 11

months following his unlawful arrest, before going to "trial". His right to a

public and speedy trial by an impartial jury (of his peers) was violated.

13)     Violation of U.S. Constitution, Article VIII: Plaintiff Jason Joseph

Clark was held in GWINNETT COUNTY DETENTION CENTER for 11

months with a bail set at $200,000 (USD). The bail was excessive.

14)    Violation of U.S. Constitution, Article VIII: Plaintiff Jason Joseph

Clark was sentenced to 50 years in prison [for pretended offenses], which is

cruel and unusual.

15)    Violation of UDHR, Article 13: Plaintiff Jason Joseph Clark was

deprived of his right to freedom of movement.

16)    Violation of UDHR, Article 3: All of the violations listed above

constitute a violation of plaintiff Jason Joseph Clark's right to liberty and

security of person.

## II.

In September 2010, after waiting 11 months in jail for a fair trial that he was

denied, plaintiff Jason Joseph Clark was transported "beyond the seas" to be tried

in a foreign tribunal of the GWINNETT COUNTY SUPERIOR COURT under

presiding judicial officer THOMAS DAVIS, JR. and then sent to SMITH STATE

PRISON slave labor camp. Plaintiff never went to trial; instead, he was threatened,

forced, and coerced—under extreme duress and anxiety—to accept the imposition

of punishment hoisted upon him by the STATE OF GEORGIA, acting through the following of its agents: DANIEL J. PORTER, THOMAS DAVIS JR., and SAM OLENS.

17)     Violation of Law of Nations & UDHR, Article 30: Though not specifically stated, trying foreign national, plaintiff Jason Joseph Clark in a court of the current United States and then sending him to SMITH STATE PRISON labor camp, is a violation of his international human right to not be tried and deported by military occupants; as provided for in the United Nations "Convention (IV) relative to the Protection of Civilian Persons in Time of War", Geneva, 12 August 1949.

18)     Violation of U.S. Constitution, Article IX: Though not specifically stated, war crimes against him as a non-combatant civilian are a violation of plaintiff Jason Joseph Clark's unalienable right to not be subjected to war crimes as a non-combatant civilian.

19)     Violation of UDHR, Article 17: Plaintiff Jason Joseph Clark was arbitrarily deprived of his property.

20)     Violation of Article V: Plaintiff Jason Joseph Clark was deprived of

liberty and property without due process of law.

21)     Violation of UDHR, Article 10: Plaintiff Jason Joseph Clark was not

given a fair and public hearing by an independent and impartial tribunal.

22)     Violation of UDHR, Article 3: The violations listed above constitute a

violation of Plaintiff Jason Joseph Clark's right to liberty and security of

person.


## III.

At this present time, (and on a daily basis for approximately four years), plaintiff

Jason Joseph Clark—in detention of the GEORGIA DEPARTMENT OF

CORRECTIONS at SMITH STATE PRISON under indirect supervision of

BRIAN OWENS and under the direct supervision of STANLEY WILLIAMS—is

subjected to extreme, harsh conditions that are inhuman and degrading, to include:

unsanitary environment, unbearable heat and/or freezing temperatures, inadequate

clothing, insufficient meals, physical restraint, violent altercations, armed prisoners

and prison personnel, constant harassment to include physical and verbal assault

from prison personnel, and many other life-threatening conditions.

23)    Violation of UDHR, Article 5: Plaintiff Jason Joseph is subjected to

cruel, inhuman and degrading treatment on a daily basis, for four years now.

24)    Violation of U.S. Constitution, Article IX: Though not enumerated,

plaintiff Jason Joseph Clark's being subjected to cruel, inhuman, and

degrading treatment on a daily basis is in violation of his unalienable right to

not be treated in a cruel, inhuman, or degrading manner.

25)    Violation of UDHR, Article 3: The violations listed above constitute a

violation of Plaintiff Jason Joseph Clark's right to liberty and security of

person.

## IV.

Plaintiff Jason Joseph Clark is presently and has been –for nearly four years, as

stated above, at SMITH STATE PRISON—restrained of his liberty, compelled to

labor in liquidation of a pretended/invalid debt imposed upon him by the STATE OF GEORGIA under chief executive NATHAN DEAL.

26)     Violation of Law of Nations & UDHR, Article 30: Though not specifically stated, forced peonage is a violation of plaintiff Jason Joseph Clark's international human right not to be subjected to forced peonage; as provided for in the United Nations "Supplementary Convention on the Abolition of Slavery, the Slave Trade, and Institutions and Practices Similar to Slavery".

27)     Violation of U.S. Constitution, Article IX: Though not specifically stated, forced peonage is a violation of plaintiff Jason Joseph Clark's unalienable right to not be subjected to forced peonage.

28)     Violation of UDHR, Article 13: Plaintiff Jason Joseph Clark is and has been (for nearly four years), denied his right to freedom of movement.

29)    Violation of UDHR, Article 3: The violations listed above constitute a

violation of plaintiff Jason Joseph Clark's right to liberty and security of

person.


**V.**

The aforementioned present enslavement of foreign national, plaintiff Jason Joseph

Clark (at SMITH STATE PRISON)—in number IV above—is involuntary.


30)    Violation of UDHR, Article 4: Plaintiff Jason Joseph Clark is being

held in forced slavery/involuntary servitude.


31)    Violation of U.S. Constitution, Article XIII: Jason Joseph Clark's

involuntary enslavement/servitude is in violation of Article XIII; whereby

slavery has been unlawfully instituted in the United States territory (e.g. land

mass).


32)    Violation of UDHR, Article 3: The violations listed above constitute a

violation of plaintiff Jason Joseph Clark's right to liberty and security of

person.

## VI.

Presently, plaintiff Jason Joseph Clark is being commercially exploited under conditions of forced labor and restraint of his movement at SMITH STATE PRISON, and has been for nearly four years.

33)     Violation of Law of Nations & Violation of UDHR, Article 30: though not specifically stated, human trafficking and commercial exploitation is a violation of plaintiff Jason Joseph Clark's international human right to not be subjected to human trafficking and commercial exploitation; as provided for in the United Nations "Convention Concerning Forced or Compulsory Labour", 1930 (No.29).

34)     Violation of U.S. Constitution, Article IX: Though not specifically stated, human trafficking and commercial exploitation are a violation of plaintiff Jason Joseph Clark's unalienable right to not be subjected to human trafficking and commercial exploitation.

35)     Violation of UDHR, Article 3: The violations listed above constitute a

violation of plaintiff Jason Joseph Clark's right to liberty and security of

person.


## VII.

In August 2010, plaintiff Tamah Jada Clark and Plaintiffs' small (then one-year-

old) child, "Baby Clark", —along with all personal belongings, which were

ransacked and destroyed—were unlawfully arrested, detained, and abducted from

the state of Florida, and personally transported/deported to the STATE OF

GEORGIA by TRACY GOODBAR and a second unidentified female employee,

("JANE DOE"), of the GWINNETT COUNTY DISTRICT ATTORNEY'S

OFFICE, under the orders of DANIEL J.PORTER.


36)     Violation of UDHR, Article 30: Kidnapping and abduction, though

not specifically stated, are violations of plaintiff Tamah Jada Clark's

international human right to not be kidnapped or abducted.

37)      <u>Violation of U.S. Constitution, Article IX:</u> Though not specifically

stated, kidnapping is a violation of plaintiff Tamah Jada Clark's unalienable

right to not be kidnapped or abducted.


38)      <u>Violation of Law of Nations & UDHR, Article 30:</u> Kidnapping and

abduction, though not specifically stated, are violations of "Baby Clark's"

international human rights to not be kidnapped; as provided for in the United

Nations "28: Convention on the Civil Aspects of International Child

Abduction", 25 October, 1980.


39)      <u>Violation of U.S. Constitution, Article IX:</u> Though not specifically

stated, kidnapping is a violation of "Baby Clark's" unalienable right to not

be kidnapped.


40)      <u>Violation of U.S. Constitution, Article IV:</u> Plaintiff Tamah Jada

Clark's unalienable right to be secure in all of her effects (person and

property) against unreasonable search and seizure was violated.

41)    Violation of U.S. Constitution, Article IV: "Baby Clark's" unalienable

right to be secure in all of his effects (person and property) against

unreasonable search and seizure was violated.


42)    Violation of UDHR, Article 17: Plaintiff Tamah Jada Clark was

arbitrarily deprived of her property; to include: custody of her child, clothes,

shoes, food, shelter, cellular phone, family pet (dog), automobile, etc.—all

of which was taken and/or discarded by the two aforementioned female

representatives of the GWINNETT COUNTY DISTRICT ATTORNEY'S

OFFICE, under the orders of DANIEL J. PORTER. The entire incident was

made a publicly humiliating spectacle for the entire neighborhood to enjoy.


43)    Violation of UDHR, Article 17: "Baby Clark" was arbitrarily deprived

of his property; to include: right to be in his mother's custody, diapers, food,

shelter, family pet (dog), toys, etc.—all of which was taken and/or discarded

by the two aforementioned female representatives of the GWINNETT

COUNTY DISTRICT ATTORNEY'S OFFICE, under the orders of

DANIEL J. PORTER.

44)    Violation of UDHR, Article 12: Plaintiff Tamah Jada Clark was
subjected to arbitrary interference of her privacy, family, and home, as well
as attacks upon her honour and reputation.

45)    Violation of UDHR, Article 12: "Baby Clark" was subjected to
arbitrary interference of his privacy, family, and home, as well as attacks
upon his honour and reputation.

46)    Violation of U.S. Constitution, Article IV: Plaintiff Tamah Jada Clark
and her property were unreasonably searched and seized, without a proper
warrant.

47)    Violation of U.S. Constitution, Article IV: "Baby Clark" and his
property were unreasonably searched and seized, without a proper warrant.

48)    Violation of UDHR, Article 9: Plaintiff Tamah Jada Clark was
subjected to arbitrary arrest and detention.

49)    Violation of UDHR, Article 9: "Baby Clark" was subjected to
arbitrary arrest and detention.

50)     Violation of Law of Nations & UDHR, Article 30: Though not specifically stated, forcefully (at gun point) transporting/deporting plaintiff Tamah Jada Clark from the state of Florida to the STATE OF GEORGIA, is a violation of her international human right to not be deported by military occupants; as provided for in the United Nations "Convention (IV) relative to the Protection of Civilian Persons in Time of War", Geneva, 12 August 1949.

51)     Violation of Law of Nations & UDHR, Article 30: Though not specifically stated, forcefully (at gun point) transporting/deporting "Baby Clark" from the state of Florida to the STATE OF GEORGIA, is a violation of his international human right to not be deported by military occupants; as provided for in the United Nations "Convention (IV) relative to the Protection of Civilian Persons in Time of War", Geneva, 12 August 1949.

52)     Violation of UDHR, Article 13: Plaintiff Tamah Jada Clark was deprived of her right to freedom of movement.

53)     Violation of UDHR, Article 13: "Baby Clark" was deprived of his right to freedom of movement.

54)      <u>Violation of UDHR, Article 3:</u> The violations listed above constitute a

violation of plaintiff Tamah Jada Clark's right to liberty and security of

person.

55)      <u>Violation of UDHR, Article 3:</u> The violations listed above constitute a

violation of "Baby Clark's" right to liberty and security of person.

## VIII.

Directly following the events of the proceeding section number VII above, (less

than 24 hours later); upon arrival to the GWINNETT COUNTY DETENTION

CENTER in Georgia, plaintiff Tamah Jada Clark (unarmed) was tackled to the

ground and beaten while holding Plaintiffs' infant child, by five male, armed

deputies of the GWINNETT COUNTY SHERIFF'S DEPARTMENT, under the

authority of BUTCH CONWAY and by order of DANIEL J. PORTER. Tamah

Jada Clark was then immediately unlawfully arrested and detained a second time—

this time by deputies of the GWINNETT COUNTY SHERIFF'S

DEPARTMENT—and confined (without even a pretended trial) and placed in an all-male Suicide Ward at GWINNETT COUNTY DETENTION CENTER under the orders of DANIEL J. PORTER.

56)      Violation of UDHR, Article 5: Plaintiff Tamah Jada Clark being physically assaulted by armed men (e.g. tackled to the ground and beaten) is cruel, inhuman, and degrading treatment.

57)      Violation of UDHR, Article 5: "Baby Clark" being physically assaulted by armed men (e.g. tackled to the ground and beaten) is cruel, inhuman, and degrading treatment.

58)      Violation of U.S. Constitution, Article IX: Though not specifically stated, being physically tackled to the ground and beaten by armed men is a violation of plaintiff Tamah Jada Clark's unalienable right to not be tackled to the ground by armed men.

59)      Violation of U.S. Constitution, Article IX: Though not specifically stated, being physically tackled to the ground and beaten is a violation of

"Baby Clark's" unalienable right to not be tackled to the ground by armed men.

60)   Violation of UDHR, Article 5: Plaintiff Tamah Jada Clark being thrown into an all-male Suicide Ward at the GWINNETT COUNTY DETENTION CENTER—in the complete absence of privacy for showering, using the bathroom, etc.—is cruel and degrading treatment.

61)   Violation of U.S. Constitution, Article IX: Though not specifically stated, plaintiff Tamah Jada Clark being indecently exposed before a mob of mentally insane and sex-starved men is a violation of her unalienable right to not be indecently exposed before a mob of mentally insane and sex-starved men.

62)   Violation of UDHR, Article 10: Plaintiff Tamah Jada Clark was denied the right to a fair and public hearing by an independent and impartial tribunal.

63)   Violation of U.S. Constitution, Article V: Plaintiff Tamah Jada Clark was deprived of liberty and child without due process of law.

64)      Violation of UDHR, Article 9: Plaintiff Tamah Jada Clark was

subjected to arbitrary arrest and detention.

65)      Violation of UDHR, Article 10: Plaintiff Tamah Jada Clark was

denied the right to a fair and public hearing by an independent and impartial

tribunal.

66)      Violation of U.S. Constitution, Article IX: Though not specifically

stated, to be unlawfully arrested and confined is a violation of plaintiff

Tamah Jada Clark's unalienable right to not be unlawfully arrested and

confined.

67)      Violation of UDHR, Article 3: The violations listed above constitute a

violation of plaintiff Tamah Jada Clark's right to liberty and security of

person.


**IX.**

Immediately thereafter (within minutes), following count VIII above, Plaintiffs'
small child, "Baby Clark", was detained and stolen from plaintiff Tamah Jada
Clark by the GWINNETT COUNTY SHERIFF'S DEPARTMENT deputies
mentioned above and given to GWINNETT COUNTY CHILD PROTECTIVE
SERVICES under the authority of D'ANNA K. LIBER, under the orders of
DANIEL J. PORTER and BUTCH CONWAY.

68)     <u>Violation of UDHR, Article 9:</u> "Baby Clark" was subjected to
arbitrary arrest and detention.

69)     <u>Violation of U.S. Constitution, Article IX:</u> Though not specifically
stated, child kidnapping and abduction is a violation of plaintiff Tamah Jada
Clark's unalienable right to not have her child kidnapped and abducted.

70)     <u>Violation of U.S. Constitution, Article IX:</u> Though not specifically
stated, child kidnapping and abduction is a violation of plaintiff Jason
Joseph Clark's unalienable right to not have his child kidnapped and
abducted.

71)     <u>Violation of UDHR, Article 17:</u> Plaintiff Tamah Jada Clark was arbitrarily deprived of her property in the right of custody of her child.

72)     <u>Violation of UDHR, Article 17:</u> Plaintiff Jason Joseph Clark was arbitrarily deprived of his property in the right of custody of his child.

73)     <u>Violation of U.S. Constitution, Article V:</u> Plaintiff Tamah Jada Clark was deprived of her property in the right of custody of her child without due process of law.

74)     <u>Violation of U.S. Constitution, Article V:</u> Plaintiff Jason Joseph Clark was deprived of his property in the right of custody of his child without due process of law.

75)     <u>Violation of Law of Nations & UDHR, Article 30:</u> Kidnapping and abduction, though not specifically stated, are violations of "Baby Clark's" international human rights to not be kidnapped; as provided for in the United Nations "28: Convention on the Civil Aspects of International Child Abduction", 25 October, 1980.

76)     <u>Violation of U.S. Constitution, Article IX:</u> Though not specifically

stated, child kidnapping and abduction is a violation of "Baby Clark's"

unalienable right to not be kidnapped and abducted.

77)     <u>Violation of UDHR, Article 3:</u> The violations listed above constitute a

violation of "Baby Clark's" right to liberty and security of person.

**X.**

In September 2010, while in transit returning back to the state of Florida after the

above-described events of August 2010 (in sections VII-IX), Plaintiff Tamah Jada

Clark and "Baby Clark"—along with personal property and belongings—were

unlawfully arrested, detained, kidnapped and abducted, then confined at the

CAMILA POLICE DEPARTMENT by JANE DOE #2; a female police officer

with the CAMILA POLICE DEPARTMENT.

78)     Violation of UDHR, Article 30: Kidnapping and abduction, though

not specifically stated, are violations of plaintiff Tamah Jada Clark's

international human right to not be kidnapped or abducted.


79)     Violation of U.S. Constitution, Article IX: Though not specifically

stated, kidnapping is a violation of plaintiff Tamah Jada Clark's unalienable

right to not be kidnapped or abducted.


80)     Violation of Law of Nations & UDHR, Article 30: Kidnapping and

abduction, though not specifically stated, are violations of "Baby Clark's"

international human rights to not be kidnapped; as provided for in the United

Nations "28: Convention on the Civil Aspects of International Child

Abduction", 25 October, 1980.


81)     Violation of U.S. Constitution, Article IX: Though not specifically

stated, kidnapping is a violation of "Baby Clark's" unalienable right to not

be kidnapped.

82)     Violation of Article IV: Plaintiff Tamah Jada Clark's unalienable right
to be secure in all of her effects (person and property) against unreasonable
search and seizure was violated.

83)     Violation of U.S. Constitution, Article IV: "Baby Clark's" unalienable
right to be secure in all of his effects (person and property) against
unreasonable search and seizure was violated.

84)     Violation of UDHR, Article 17: Plaintiff Tamah Jada Clark was
arbitrarily deprived of her property; to include: custody of child, baby
pictures and videos from every day of "Baby Clark's" life since his birth,
bible & biblical journal, clothes, shoes, food, cellular phone, laptop
computer, camera, etc.––all of which was taken and/or discarded by JANE
DOE #2 of the CAMILA POLICE DEPARTMENT. A few hours later,
JANE DOE #2, in cooperation with RONALD SPENCE of the MITCHELL
COUNTY DEPARTMENT OF FAMILY AND CHILD SERVICES
kidnapped and abducted "Baby Clark" from plaintiff Tamah Jada Clark's
custody under the authority of PATRICIA GRAY, whom detained "Baby
Clark" for over a month. BRIAN BELLAMY conspired with RONALD

SPENCE AND PATRICIA GRAY in "Baby Clark's" kidnapping and abduction—which they all intended to be permanent.

85)      Violation of UDHR, Article 17: Plaintiff Jason Joseph Clark was arbitrarily deprived of his property in the right of custody of his child.

86)      Violation of U.S. Constitution, Article IX: Though not specifically stated, child kidnapping and abduction is a violation of plaintiff Tamah Jada Clark's unalienable right to not have her child kidnapped and abducted.

87)      Violation of U.S. Constitution, Article IX: Though not specifically stated, child kidnapping and abduction is a violation of plaintiff Jason Joseph Clark's unalienable right to not have his child kidnapped and abducted.

88)      Violation of UDHR, Article 17: "Baby Clark" was arbitrarily deprived of his property; to include: being in mother's custody, diapers, food, toys, personal photos and videos of everyday of his life since birth, etc.—all of

which was taken and/or discarded by JANE DOE #2 of the CAMILA

POLICE DEPARTMENT.

89)    Violation of UDHR, Article 12: Plaintiff Tamah Jada Clark was

subjected to arbitrary interference of her privacy and family, as well as

attacks upon her honour and reputation.

90)    Violation of UDHR, Article 12: "Baby Clark" was subjected to

arbitrary interference of his privacy and family, as well as attacks upon his

honour and reputation.

91)    Violation of UDHR, Article 10: Plaintiff Tamah Jada Clark was

denied the right to a fair and public hearing by an independent and impartial

tribunal.

92)    Violation of U.S. Constitution, Article V: Plaintiff Tamah Jada Clark

was deprived of liberty and child without due process of law.

93)      Violation of UDHR, Article 9: Plaintiff Tamah Jada Clark was

subjected to arbitrary arrest and detention.

94)      Violation of U.S. Constitution, Article IX: Though not specifically

stated, to be unlawfully arrested and confined is a violation of plaintiff

Tamah Jada Clark's unalienable right to not be unlawfully arrested and

confined.

95)      Violation of UDHR, Article 13: Plaintiff Tamah Jada Clark was

deprived of her right to freedom of movement.

96)      Violation of UDHR, Article 13: "Baby Clark" was deprived of his

right to freedom of movement.

97)      Violation of UDHR, Article 3: The violations listed above constitute a

violation of plaintiff Tamah Jada Clark's right to liberty and security of

person.

98)     <u>Violation of UDHR, Article 3:</u> The violations listed above constitute a

violation of "Baby Clark's" right to liberty and security of person.


## XI.

After several hours of being at the CAMILA POLICE DEPARTMENT (as

described in X above), JOHN DOE of the PELHAM POLICE DEPARTMENT

arrested and detained plaintiff Tamah Jada Clark (for the second time in

MITCHELL COUNTY), then transported and confined plaintiff Tamah Jada Clark

to/in the PELHAM POLICE DEPARTMENT.


99)     <u>Violation of UDHR, Article 9:</u> Plaintiff Tamah Jada Clark was

subjected to arbitrary arrest and detention.


100)    <u>Violation of Article V:</u> Plaintiff Tamah Jada Clark was deprived of

liberty and property without due process of law.

101)   Violation of U.S. Constitution, Article IX: Though not specifically stated, to be unlawfully arrested and confined is a violation of plaintiff Tamah Jada Clark's unalienable right to not be unlawfully arrested and confined.

102)   Violation of Article IV: Plaintiff Tamah Jada Clark's unalienable right to be secure in all of her effects (person and property) against unreasonable search and seizure was violated.

103)   Violation of UDHR, Article 3: The violations listed above constitute a violation of plaintiff Tamah Jada Clark's right to liberty and security of person.

## XII.

After three days of being at the PELHAM POLICE DEPARTMENT in solitary confinement, JOHN DOE re-emerged and visited plaintiff Tamah Jada Clark in solitary confinement where he verbally assaulted her; and attempted to use the threat of physical force and indefinite imprisonment in order to compel plaintiff

Tamah Jada Clark to bear false witness against herself by admitting to a series of false accusations that JOHN DOE attempted to place upon her. Her refusal to follow his orders to incriminate herself, caused JOHN DOE to grow increasingly angry and to physically assault her because of it, by pushing her to the ground as he left the jail cell.

104) <u>Violation of UDHR, Article 5:</u> Plaintiff Tamah Jada Clark being placed in solitary confinement for three days was cruel, inhuman, and degrading treatment.

105) <u>Violation of UDHR, Article 5:</u> Verbally and physically assaulting plaintiff Tamah Jada Clark was cruel, inhuman, and degrading treatment.

106) <u>Violation of UDHR, Article 11:</u> Plaintiff Tamah Jada Clark was charged with a penal offence, but was denied her right to be presumed innocent until proven guilty in a public trial, as well as denied all the guarantees necessary for his defence; such as: access to communication with family or council, etc.

107)     Violation of U.S. Constitution, Article IX: Though not specifically
stated, to be unlawfully arrested and confined is a violation of plaintiff
Tamah Jada Clark's unalienable right to not be unlawfully arrested and
confined.

108)     Violation of Article IV: Plaintiff Tamah Jada Clark's unalienable right
to be secure in all of her effects (person and property) against unreasonable
search and seizure was violated.

109)     Violation of UDHR, Article 3: The violations listed above constitute a
violation of plaintiff Tamah Jada Clark's right to liberty and security of
person.

## XIII.

Within hours after being assaulted by JOHN DOE, plaintiff Tamah Jada Clark was
transported to MITCHELL COUNTY JAIL, where she was arrested and detained
(for the third time in MITCHELL COUNTY); then confined for nearly two weeks
at MITCHELL COUNTY JAIL, until bail was posted. While in confinement at

MITCHELL COUNTY JAIL, GWINNETT COUNTY officials and MITCHELL COUNTY officials co-conspired to place a defamatory and false story about PLAINTIFFS and "Baby Clark" in television and online news media.

110)    Violation of UDHR, Article 13: Plaintiff Tamah Jada Clark was deprived of her right to freedom of movement.

111)    Violation of UDHR, Article 11: Plaintiff Tamah Jada Clark was charged with a penal offence, but was denied her right to be presumed innocent until proven guilty in a public trial, as well as denied all the guarantees necessary for his defence; such as: proper counsel, access to communication with family, etc.

112)    Violation of Article V: Plaintiff Tamah Jada Clark was deprived of liberty and property without due process of law.

113)    Violation of UDHR, Article 4: Plaintiff Tamah Jada Clark was held in involuntary servitude.

114)   <u>Violation of U.S. Constitution, Article XIII:</u> Plaintiff Tamah Jada

Clark was held in involuntary servitude [for a pretended debt] imposed upon

her by JOHN DOE, within the territory of the United States Republic—

where said slavery is unlawful.

115)   <u>Violation of UDHR, Article 3:</u> The violations listed above constitute a

violation of plaintiff Tamah Jada Clark's right to liberty and security of

person.

116)   <u>Violation of UDHR, Article 12:</u> Plaintiff Tamah Jada Clark was

subjected to arbitrary interference of her privacy and family, as well as

attacks upon her honour and reputation.

117)   <u>Violation of UDHR, Article 12:</u> Plaintiff Jason Joseph Clark was

subjected to arbitrary interference of his privacy and family, as well as

attacks upon his honour and reputation.

118)     <u>Violation of UDHR, Article 12:</u> Plaintiff "Baby Clark" was subjected

to arbitrary interference of his privacy and family, as well as attacks upon

his honour and reputation.

## XIV.

As of January 2014, communication has been had with the following individuals

regarding the injustice of the events and respective claims heretofore enumerated

in this Complaint, but they have refused their assistance and worked to further

suppress and subjugate Plaintiffs. For this reason, these individuals are also

included in this Complaint: SAM OLENS, DAVID CAVENDAR, BRIAN

OWENS, and BRIAN KEMP. Exhibit B is hereby made part of this complaint for

all purposes. And, of course, because the STATE OF GEORGIA is the official

sponsor of every individual name is this Complaint, it must also be held

responsible and liable for all of the damages and mistreatment that Plaintiffs have

incurred, without the need for remuneration of all counts/claims contained herein.

119)    Violation of UDHR, Article 20: SAM OLENS has violated plaintiff
Jason Joseph Clark's right to be free of compelled association.

120)    Violation of UDHR, Article 20: DAVID CAVENDAR has violated
plaintiff Jason Joseph Clark's right to be free of compelled association.

121)    Violation of UDHR, Article 20: BRIAN OWENS has violated
plaintiff Jason Joseph Clark's right to be free of compelled association.

122)    Violation of UDHR, Article 20: BRIAN KEMP has violated plaintiff
Jason Joseph Clark's right to be free of compelled association.

123)    Violation of UDHR, Article 20: SAM OLENS has violated plaintiff
Tamah Jada Clark's right to be free of compelled association.

124)    Violation of UDHR, Article 20: BRIAN KEMP has violated plaintiff
Tamah Jada Clark's right to be free of compelled association.

125)    <u>Violation of UDHR, Article 20:</u> BRIAN KEMP has violated plaintiff

"Baby Clark's" right to be free of compelled association.


**CONCLUSION AND PRAYER FOR RELIEF:**


Defendants have committed grave offenses—against Freemen (Plaintiffs) with

*natural* and unalienable Rights recognizable under the *law of nations* and the

Universal Declaration of Human Rights, as well as other international treaties and

conventions to which the U.S. is party; and, the Bill of Rights of the organic,

natural Constitution of the Republic of the United States of America (e.g. the

supreme law of the land)— of which the mental and emotional damages are

irreparable.


The U.S. Supreme Court has held that if a court is "without authority, its

judgments and orders are regarded as nullities. They are not voidable, but simply

void; and form no bar to a recovery sought, even prior to a reversal in opposition to

them. **They constitute no justification; and all persons concerned in executing**

**such judgments or sentences, are considered, in law, as trespassers**."

*(Emphasis added).* Elliott v. Lessee of Piersol, 26 U.S. 1 Pet. 328 328 (1828).

Plaintiffs demand relief as follows:

1) Injunctive relief, whereby plaintiff Jason Joseph Clark be immediately released from detention by STANLEY WILLIAMS and the GEORGIA DEPARTMENT OF CORRECTIONS.

2) Monetary compensation and relief in the amount of 20,000,000,000 USD (without preference as to how it is to be divided amongst Defendants).

3) That all notions and records suggesting U.S. citizenship/U.S. "personhood" or STATE OF GEORGIA residence of Plaintiffs and "Baby Clark" be permanently and immediately removed from the STATE OF GEORGIA records, to include: driver's license, voter registration, birth certificate, vehicle registration, marriage license and all other records that may exist that could potentially create the presumption of political or commercial ties of any kind between Plaintiffs and the STATE OF GEORGIA.

(REPRESENTATIONS TO THE COURT)

We, the Plaintiffs, certify that to the best of our knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that this Complaint is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and, that the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

ON BEHALF OF PLAINTIFFS,

*(Signed Tuesday, July 15, 2014)*

**Tamah Jada Clark**
Mailing Address:
6901-A N. 9th Ave. #429
Pensacola Florida [32504]
Email: TamahJClark@gmail.com
Ph: (850) 512-6642