UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JASON JOSEPH CLARK,
TAMAH JADA CLARK,
(both on their own behalf and
that of "Baby Clark")

    Plaintiffs,

vs.                                                        Civil Action No. 1:14-CV-2128 WBH

DANIEL J. PORTER, NATHAN DEAL,
THOMAS DAVIS JR., SAM OLENS,
DAVID CAVENDAR, BRIAN OWENS,
STANLEY WILLIAMS, D'ANNA K.
LIBER, CHARLES M. WALTERS,
BUTCH CONWAY, TRACY GOODBAR,
JANE DOE #1, PATRICIA GRAY, BRIAN
BELLAMY, RONALD SPENCE, JANE
DOE #2, JOHN DOE, BRIAN KEMP
(all in personal and official capacities);
And GEORGIA DEPARTMENT OF
CORRECTIONS, GWINNETT COUNTY,
GWINNETT COUNTY POLICE
DEPARTMENT, PELHAM POLICE
DEPARTMENT, CAMILA POLICE
DEPARTMENT, MITCHELL COUNTY,
STATE OF GEORGIA,

    Defendants.

_____/

# MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS OF THE CAMILLA POLICE DEPARTMENT AND MITCHELL COUNTY, GEORGIA

COME NOW the CAMILLA POLICE DEPARTMENT and MITCHELL COUNTY, GEORGIA ("Mitchell County"), named as defendants in the above-styled action, and file this their memorandum in support of their motion to dismiss Plaintiffs' amended complaint (Doc. 3), showing the Court as follows:

## STATEMENT OF FACTS

In August of 2010, plaintiff Tamah Jada Clark ("Tamah"), as well as the child of Tamah and plaintiff Jason Joseph Clark ("Jason"), were allegedly arrested in the State of Florida and transported to the State of Georgia. (Doc. 3, ¶ VII.) Tamah and Jason are hereinafter collectively referred to as "Plaintiffs." In their amended complaint, Plaintiffs referred to their child as "Baby Clark" and, for the sake of consistency, the child is hereinafter referred to as such. At some point after Tamah and Baby Clark arrived in Georgia, Tamah was allegedly arrested by Gwinnett County Deputy Sheriffs. (Doc. 3, ¶ VIII.) Following her arrest, Tamah was incarcerated in the Gwinnett County Detention Center and Baby Clark was taken into custody by Gwinnett County Child Protective Services. (Doc. 3, ¶¶ VIII-IX.)

2

It appears that Tamah was released from the Gwinnett County Detention Center in September of 2010. (Doc. 3, ¶ X.) Following her release, Tamah and Baby Clark attempted to return to the State of Florida. (Doc. 3, ¶ X.) However, before they reached Florida, Tamah and Baby Clark were allegedly arrested by a female police officer and taken to the Camilla Police Department. (Doc. 3, ¶ X.).

After spending several hours at the Camilla Police Department, Tamah was arrested by an officer working for the City of Pelham. (Doc. 3, ¶ XI.) Thereafter, Tamah was transported to the Pelham Police Department. (Doc. 3, ¶ XI.) Plaintiffs allege that Tamah was incarcerated at the Pelham Police Department for some period of time. (Doc. 3, ¶ XI.)

According to Plaintiffs, Tamah spent three days in solitary confinement during her incarceration at the Pelham Police Department. (Doc. 3, ¶ XII.) Plaintiffs claim that, during her time in solitary confinement, Tamah was assaulted by an officer who worked at the Pelham Police Department. (Doc. 3, ¶ XII.) Following that alleged assault, Tamah was transported to the Mitchell County Jail. (Doc. 3, ¶XIII.) Plaintiffs allege that Tamah was incarcerated in the Mitchell County Jail for "nearly two weeks . . . until bail was posted." (Doc. 3, ¶ XIII.) Plaintiffs further allege that, while Tamah was confined in the Mitchell County

Jail, officials of Mitchell County placed a defamatory and false story about Plaintiffs and Baby Clark on television and in online news media. (Doc. 3, ¶ XIII.)

On July 3, 2014, Plaintiffs filed their initial complaint in this case. (Doc. 1.) Two weeks later, Plaintiffs filed an amended complaint in which they included claims against the Camilla Police Department and Mitchell County. (Doc. 3.) Those claims are based on alleged violations of Georgia law, as well as alleged violations of the rights afforded Plaintiffs by the Constitution of the United States (the "Constitution") and the Universal Declaration of Human Rights (the "UDHR"). (Doc. 3, ¶¶ 78-98; 110-118.) However, the claims that Plaintiffs are asserting against the Camilla Police Department and Mitchell County are subject to dismissal.

**ARGUMENT AND CITATION OF AUTHORITY**

As explained in more detail below, the claims that Plaintiffs are asserting against the Camilla Police Department are subject to dismissal because the Camilla Police Department is not an entity capable of being sued. In addition, the state law claims that Plaintiffs are asserting against Mitchell County are barred by the doctrine of sovereign immunity. Further, the claims that Plaintiffs are asserting against Mitchell County as a result of alleged constitutional violations are subject to dismissal because Plaintiffs fail to identify a policy, custom or practice that

4

resulted in such a violation. Finally, because it does not provide a basis for liability, the claims that Plaintiffs are asserting against Mitchell County pursuant to the UDHR are also subject to dismissal.

## I. PLAINTIFFS' CLAIMS AGAINST THE CAMILLA POLICE DEPARTMENT

The claims that Plaintiffs are asserting against the Camilla Police Department should be dismissed because the Camilla Police Department is not an entity capable of being sued. "In Federal Courts, the capacity of an entity of being sued is determined by the law of the state where the court is located." *Keene v. Lowndes County Sheriff's Office,* 2010 WL 2507312, *1 (M.D. Ga. 2010), citing Fed.R.Civ.P. 17(b). For that reason, in this case, Georgia law controls. *Id.* Georgia courts have long held that there are only three classes of legal entities that may "sue and be sued," "namely: (1) natural persons; (2) an artificial person (corporations); and (3) such quasiartificial persons as the law recognizes as being capable to sue." *Cravey v. Southeastern Underwriters Ass'n*, 214 Ga. 450 (1958). There should be no question that the Camilla Police Department is not a person or a corporation. Furthermore, this Court has determined that police departments are not quasiartificial persons that are capable of being sued. *Howell v. City of Lithonia,* 2009 WL 481640, *4 (N.D. Ga. 2009) ("The court agrees with Defendants that the Lithonia Police Department is not an entity capable of being

sued and dismisses Plaintiff's claims against it as well."); *Murdock v. Cobb County, Ga.,* 2013 WL 2155465 (N.D. Ga. 2013) (holding that the Cobb County Police Department is not an entity capable of being sued and dismissing claims asserted against it); see also *Smith v. City of Unadilla,* 510 F.Supp.2d 1335, 1342 (M.D. Ga. 2007) ("[T]he Court notes that the Unadilla Police Department is not an entity capable of being sued in this case and is hereby dismissed."); *Leonard v. City of Columbus,* 2010 WL 3717251 (M.D. Ga. 2010) (finding that the Columbus Police Department was not an entity capable of being sued and dismissing the claims asserted against it); and *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 2005) (sheriff and police departments not usually considered legal entities subject to suit). Thus, the claims that Plaintiffs are asserting against the Camilla Police Department should be dismissed. See *Rodriguez v. City of Moultrie,* 2014 WL 4450388 (M.D. Ga. 2014) (dismissing claims asserted against the Moultrie Police Department because it is not an entity capable of being sued).

## II. PLAINTIFFS' CLAIMS AGAINST MITCHELL COUNTY

The factual basis for the claims that Plaintiffs are asserting against Mitchell County are found in Paragraph XIII of Plaintiffs' complaint. In that paragraph, Plaintiffs allege that Tamah was confined in the Mitchell County Jail for approximately two weeks. (Doc. 3, ¶ XIII.) Plaintiffs further alleged that, while

6

Tamah was incarcerated in the Mitchell County Jail, "Gwinnett County officials and Mitchell County officials co-conspired to place a defamatory and false story about plaintiffs and 'Baby Clark' in television and online news media." (Doc. 3, ¶ XIII.)

Based on the language of Paragraph XIII, it appears that Plaintiffs are asserting a defamation claim against Mitchell County. In addition, the numbered paragraphs following Paragraph XIII suggest that Plaintiffs are also asserting claims against Mitchell County based on purported violations of the Constitution and the UDHR. As far as the Constitutional violations are concerned, in Paragraph 112 of their complaint, Plaintiffs allege that Tamah "was deprived of liberty and property without due process of law." (Doc. 3, ¶ 112.) In addition, in Paragraph 114, Plaintiffs allege that Tamah "was held in involuntary servitude [for a pretended debt] imposed upon her by JOHN DOE, within the territory of the United States Republic – where slavery is unlawful." (Doc. 3, ¶ 114.) Finally, Plaintiffs claim that Mitchell County violated the UDHR by: (1) depriving Tamah of her right to freedom of movement (Doc. 3, ¶ 110); (2) denying Tamah of her right to be presumed innocent until proven guilty (Doc. 3, ¶ 111); (3) holding Tamah in involuntary servitude (Doc. 3, ¶ 113); (4) violating Tamah's right to liberty and security of person (Doc. 3, ¶ 115); (5) subjecting Tamah to arbitrary

interference of her privacy and family (Doc. 3, ¶ 116); (6) subjecting Jason to arbitrary interference of his privacy and family (Doc. 3, ¶ 117); and (7) subjecting Baby Clark to arbitrary interference of his privacy and family (Doc. 3, ¶ 118). For the reasons set forth below, Mitchell County shows that the claims that Plaintiffs are asserting against Mitchell County are subject to dismissal.

### A. Plaintiffs' defamation claim is subject to dismissal.

As noted above, in Paragraph XIII, Plaintiffs allege that "Mitchell County officials co-conspired to place a defamatory and false story" about them in the media. Based on those allegations, it appears that Plaintiffs are asserting a claim for defamation against Mitchell County. Claims for defamation arise under Georgia law. See O.C.G.A. §§ 51-5-4 and 51-5-10. As a result, any defamation claim that Plaintiffs are asserting against Mitchell County is barred by the doctrine of sovereign immunity. *Jones v. Grady County, Ga.,* 2014 WL 3965955 (M.D. Ga. 2014) (dismissing the state law claims that a plaintiff asserted against Grady County because they were barred by sovereign immunity).

"The doctrine of sovereign immunity protects all levels of government from legal action unless they have waived their immunity from suit." *Johnson v. Randolph County*, 301 Ga. App. 265 (2009), citing *Cameron v. Lang*, 274 Ga. 122, 124 (2001). In Georgia, the protection afforded by sovereign immunity applies to

8

the state and extends to suits against counties. Ga. Const., Art. I, Sec. II, Par. IX(e); *McCobb v. Clayton Co.,* 309 Ga. App. 217 (2011) ("As provided in Georgia's constitution, sovereign immunity extends to the counties . . . .") As this Court recently noted, "[t]he Sovereign immunity provided in the Georgia Constitution to the state or any of its departments or agencies also applies to Georgia's counties." *Ivey v. DeKalb County, Ga.,* 2013 WL 5285506, *2 (N.D. Ga. 2013); see also *Stanford v. Patterson,* 2013 WL 5781668, *3 (M.D. Ga. 2013) ("The Georgia Supreme Court has held that 'departments and agencies' of the State include counties, which are thus entitled to sovereign immunity from suit.")

The defense of sovereign immunity can only be waived pursuant to a "legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." *Woodard v. Laurens,* 265 Ga. 404, 405 (1995); see also O.C.G.A. § 36-1-4 (declaring that "[a] county is not liable to suit for any cause of action unless made so by statute."); see also *Gilbert v. Richardson*, 264 Ga. 744 748 ("we hold that sovereign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver."); *Effingham County v. Rhodes,* 307 Ga. App. 504, 504-505 (2010) ("[Sovereign] immunity, at least for counties, may only be waived by a legislative

9

act which specifically provides that sovereign immunity is waived and the extent of such waiver.")

"Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and, therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue." *Bd of Commissioners of Glynn Co. v. Johnson*, 311 Ga. App. 867, 869 (2011). Furthermore, Plaintiffs bear the burden of establishing that sovereign immunity is not applicable. See *Fulton County v. Colon,* 316 Ga. App. 883, 884 (2012) ("Because [the plaintiffs] sought to benefit from the waiver of the County's sovereign immunity from suit, they had the burden of establishing the waiver."); *Johnson,* 311 Ga. App. at 869 ("A waiver of sovereign immunity must be established by the party seeking to benefit from that waiver."); *Smith,* 2013 WL 5781668, *3 ("[I]mmunity from suit is a privilege that is subject to waiver by the State, and the waiver must be established by the party seeking to benefit from the waiver.") Thus, Plaintiffs have the burden of identifying a statute that purportedly waives Mitchell County's sovereign immunity. In these circumstances, Plaintiffs cannot meet that burden because the only statute that waives a county's sovereign immunity to tort claims is O.C.G.A. § 33-24-51, and it only applies to claims related to injuries that arise out of the negligent use, ownership, operation or maintenance of an insured county motor

vehicle. See *Johnson,* 311 Ga. App. at 869-870; see also *Harry v. Glynn County*, 269 Ga. 503 (1998).

The state law claim that Plaintiffs are asserting against Mitchell County is based upon injuries that they allegedly sustained as a result of "a defamatory and false statement . . . in television and [in] online media." (Doc. 3, ¶ XIII.) Because the claim does not arise out of the alleged negligent use of a county motor vehicle, Plaintiffs' claim is barred by the doctrine of sovereign immunity. See *Johnson,* 311 Ga. App. at 870 (finding that the plaintiff's claims were barred by sovereign immunity because they did not arise out of Glynn County's use of a motor vehicle); see also *Jones,* 2014 WL 3965955, *7 (dismissing state law claims against Grady County because the plaintiff failed to demonstrate that sovereign immunity had been waived); *Ivey,* 2013 WL 5285506, *2 (granting DeKalb County's motion to dismiss plaintiff's state law claims because plaintiff failed to establish that sovereign immunity had been waived); *Smith,* 2013 WL 5781668, *3 (granting summary judgment to Jones County because it was the plaintiff's burden to show that Jones County waived its sovereign immunity and the plaintiff failed to do so). As a result, the defamation claim that Plaintiffs are asserting against Mitchell County should be dismissed.

### B. Plaintiffs' Constitutional claims are subject to dismissal.

As noted above, it appears that Plaintiffs are claiming that Mitchell County violated the rights afforded Tamah by the Constitution. In particular, Plaintiffs claim that Mitchell County violated the right to due process afforded to Tamah by the Fifth Amendment and that Mitchell County subjected Tamah to involuntary servitude in violation of the Thirteenth Amendment. (Doc. 3, ¶¶ 112; 114.) Those claims are based on Plaintiffs' contention that Tamah was arrested and detained in the Mitchell County Jail. (Doc. 3, ¶ XIII.) For the reasons set forth below, Mitchell County shows that Plaintiffs' Constitutional claims should be dismissed.

Although it is not specified in their complaint, Plaintiffs' Constitutional claims are presumably being asserted pursuant to 42 U.S.C. § 1983. *Worthy v. Georgia Dept. of Human Resources,* 2005 WL 3533048, *1 (S.D. Ga. 2005) ("42 U.S.C. § 1983 is the proper avenue for pursuing a claim against a state actor for violation of constitutional rights.") However, as this Court has noted, "[a] county's liability under § 1983 may not be based on the doctrine of *respondeat superior.*" *Hogan v. Wellstar Health Network, Inc.,* 2013 WL 1136980, *3 (N.D. Ga. 2013); *Griffin v. City of Brunswick, Georgia,* 2005 WL 3272461, *2 (S.D. Ga. 2005) ("A municipality's liability under § 1983 may not be based on the doctrine of *respondeat superior.*") Instead, to establish the liability of a city or county, a

plaintiff must show that his or her Constitutional deprivation resulted from a custom, policy or practice of the municipality. *Smith v. City of Atlanta, Ga.,* 2011 WL 4500022, *2 (N.D. Ga. 2011), citing *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658 (1978); *Searcy v. Ben Hill County School District,* 2014 WL 2037789, *6 (M.D. Ga. 2014) ("In order to state a section 1983 claim against a local government entity, a plaintiff must identify a specific deprivation of federal rights *and* the local government policy or custom that caused the deprivation of federal rights.") (emphasis in original).

"Thus, plaintiffs asserting municipal or county liability under Section 1983 must show that the government's 'official policy' caused the unconstitutional actions of its employee. To do this, plaintiffs must identify a municipal 'policy' or 'custom' that caused [their] injury. It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *Smith,* 2011 WL 4500022, *2. (internal citations omitted). "Therefore, to plead a section 1983 violation against a local government entity, a plaintiff must allege facts showing that an official custom or policy of the local government entity caused the constitutional injury." *Searcy,* 2014 WL 2037789, *6.

"A plaintiff has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policy maker for the county." *Pellitteri v. Prine,* 2013 WL 4495847, *3 (M.D. Ga. 2013.) "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice . . . . Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Muckle v. Robinson,* 2013 WL 251113 (N.D. Ga. 2013). In this case, Plaintiffs have not alleged that any policy, custom or practice on the part of Mitchell County resulted in a violation of their Constitutional rights. As a result, the claims that Plaintiffs are asserting against Mitchell County for alleged violations of their Constitutional rights should be dismissed. See *Barr v. Gee,* 437 Fed. Appx. 865, *7 (2011) (affirming the district court's dismissal of § 1983 claims against a county because the plaintiff did not allege facts sufficient to state a violation of an official custom or policy); *Searcy,* 2014 WL 2037789, *6 (granting school system's motion to dismiss because the plaintiffs failed to identify a custom or policy that caused a Constitutional violation.)

### C. Plaintiffs' UDHR claims are subject to dismissal.

As noted above, based on the factual allegations contained in Paragraph XIII of their complaint, Plaintiffs assert a number of claims against Mitchell County pursuant to the UDHR. (Doc. 3, ¶¶ 110-111; 113-118.) It appears that the UDHR was adopted by the General Assembly of the United Nations in 1948. *American Federation of Labor v. American Sash & Door Co., et al.,* 335 U.S. 538, FN 5 (1949). However, the UDHR "is non-binding and likewise does not provide a private cause of action." *Lynch v. Lewis,* 2014 WL 1813725, *3 (M.D. Ga. 2014), citing *Sosa v. Alvarez-Machain,* 542 U.S. 692, 734 (2004); see also *Konar v. Illinois,* 327 Fed. Appx. 668, 640 (7th Cir. 2009) (UDHR is "non-binding" and provides "no private rights of action.") For that reason, and because 42 U.S.C. § 1983 does not give rise to a claim for alleged violations of the UDHR, the claims that Plaintiffs are asserting against Mitchell County pursuant to the UDHR are subject to dismissal. See *Moore v. McLaughlin,* 2014 WL 2619804, *3 (11th Cir. 2014) (affirming the dismissal of a claim asserting violations of the UDHR because a § 1983 claim cannot be based on a violation of the UDHR).

## CONCLUSION

Based on the foregoing, the Camilla Police Department and Mitchell County respectfully request that the Court issue an order granting their motion to dismiss.

This 24th day of September, 2014.

>s/Raleigh W. Rollins_____
>Raleigh W. Rollins
>Georgia Bar No. 613860
>Attorney for the Camilla Police
>Department and Mitchell County, GA
>Alexander & Vann, LLP
>411 Gordon Avenue
>Thomasville GA 31792
>Telephone: (229) 226-2565
>Facsimile: (229) 228-0444
>E-mail: rrollins@alexandervann.com

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Rule 7.1 of the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing document utilizes 14 Point New Times Roman font, which is authorized by Local Rule 5.1B.

>s/Raleigh W. Rollins_____
>Raleigh W. Rollins
>Georgia Bar No. 613860
>Attorney for the Camilla Police
>Department and Mitchell County, GA
>Alexander & Vann, LLP
>411 Gordon Avenue
>Thomasville GA 31792
>Telephone: (229) 226-2565
>Facsimile: (229) 228-0444
>E-mail: rrollins@alexandervann.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have furnished a copy of the foregoing document and a copy of the Notice of Electronic Filing to the following non-CM/ECF participants: Jason Joseph Clark, 6901-A North 9th Avenue, #429, Pensacola, Florida 32504; and Tamah Jada Clark, 6901-A North 9th Avenue, #429, Pensacola, Florida 32504, by U.S. Mail, postage prepaid.

                                                              s/Raleigh W. Rollins_____
Raleigh W. Rollins
Georgia Bar No. 613860
Attorney for the Camilla Police
Department and Mitchell County, GA
Alexander & Vann, LLP
411 Gordon Avenue
Thomasville GA 31792
Telephone: (229) 226-2565
Facsimile: (229) 228-0444
E-mail: rrollins@alexandervann.com