IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JASON JOSEPH CLARK, et al.,        |
                                   |
        Plaintiffs,                |
                                   |        CIVIL ACTION NO.
        v.                         |        1:14-cv-02128-WBH
                                   |
DANIEL J. PORTER, et al.,          |
                                   |
        Defendants.                |
_____  |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR PRE-ANSWER MOTION TO DISMISS

COME NOW District Attorney Daniel Porter, Governor Nathan Deal, Judge

Thomas Davis Jr., Attorney General Sam Olens, Secretary of State Brian Kemp,

Commissioner Brian Owens, Warden Stanley Williams, D'Anna Liber, Brian

Bellamy, Georgia Department of Corrections ("GDC"), and the State of Georgia

(collectively, "Defendants"), by and through counsel and submit this brief in

support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b).[1]

---

[1] Defendants filed a Motion for Leave to File Excess Pages with the Court on September 15, 2014, requesting leave to file a brief of no more than 35 pages and explaining that excess pages are needed due to the length of Plaintiff's complaint, the numerous defenses to be raised by Defendants, and the fact that the brief is being filed on behalf of eleven Defendants.  (Doc. 29.)

# I.    PLAINTIFFS' ALLEGATIONS

Plaintiff Tamah Jada Clark ("Ms. Clark"), proceeding pro se, filed the complaint in this case on July 3, 2014,[2] purportedly "on behalf of" herself and co-plaintiffs Jason Joseph Clark ("Mr. Clark") and "Baby Clark," Ms. Clark's husband and child, respectively.  Ms. Clark describes Plaintiffs as "Floridian-American foreign nationals" who are "neither citizens nor nationals of the United States" and "do not support the current U.S. system" but are "non-hostile, non-belligerent alien friends."  (Doc. 3, pp. 2-3)  She describes their suit as alleging "violations of the *law of nations*," the "Universal Declaration of Human Rights," and "the organic Constitution of the United States of America Republic (and the Bill of Rights contained therein)."  (Id., pp. 4-5 (emphasis in original)).

Counts I-VI of the Complaint concern Mr. Clark and his arrest, conviction, sentencing, and confinement in Smith State Prison.[3]  In Counts I and II, Plaintiffs contend that Mr. Clark was arrested "in a degrading and defamatory manner" in September 2009, that his property was "taken at that time and [has] not since been returned," and that he remained in custody "for 11 months without a trial" and with

---

[2] The complaint was subsequently amended on July 17, 2014.  (Doc. 3)  Only the amended complaint (hereinafter, the "Complaint"), was served on Defendants.

[3] Plaintiff Jason Clark received a 30-year sentence on September 22, 2010, for the crimes of aggravated assault, false imprisonment, and possession of marijuana with intent to distribute.  He is currently serving his sentence at Smith State Prison.

bail "set at $200,000."  (Doc. 3, pp. 6, 9).  Plaintiffs aver that Mr. Clark appeared in Gwinnett County Superior Court before defendant Judge Davis, was subsequently convicted upon a guilty plea in 2010, and was "sentenced to 50 years in prison for pretended [sic] offenses" and "sent to Smith State Prison slave labor camp."  (Id., p. 10).   The Complaint alleges that Mr. Clark was "threatened, forced, and coerced" to "accept the imposition of punishment" in 2010 by the State of Georgia, "acting through" its "agents," defendants District Attorney Porter, Judge Davis, and Attorney General Olens.  (Id., pp. 10-11).

In Counts III-VI, Plaintiffs complain that Mr. Clark's confinement at Smith State Prison "under the indirect supervision of [defendant] Brian Owens and [] the direct supervision of [defendant] Stanley Williams" amounts to "slavery/involuntary servitude."   (Id., pp. 12-13, 15). They contend that the "inhuman" conditions include an "unsanitary environment, unbearable heat and/or freezing temperatures, inadequate clothing, insufficient meals, physical restraint, violent altercations, armed prisoners and prison personnel," and "physical and verbal assault from prison personnel."  (Id.).   They further aver that Mr. Clark's confinement arises from a "pretended/invalid [sic] debt" imposed on him by the State, of which Governor Deal is the "chief executive."  (Id., pp. 13-14).

Counts VII through XIII concern plaintiffs Ms. Clark and "Baby Clark" and arise out of Ms. Clark's purported arrests in August 2010 and September 2010. In particular, Plaintiffs aver that, in August 2010, plaintiffs Ms. Clark and "Baby Clark" "were unlawfully arrested, detained, and abducted" "under the orders of" defendant District Attorney Porter and that they were "deprived of [] property" in the process. (Id., pp. 17, 19). Plaintiffs contend that, following the arrest, Ms. Clark was "tackled to the ground and beaten by [sheriff's] deputies" "by order of" defendant Porter and was "placed in an all-male Suicide Ward at Gwinnett County Detention Center" with "mentally insane and sex-starved men" and without "privacy for showering, using the bathroom, etc." (Id., pp. 23, 24). Plaintiffs allege that, immediately following Ms. Clarks' incarceration, "Baby Clark" was "detained and stolen" from her by Gwinnett County sheriff's deputies and placed with child protective services "under the authority of [defendant] D'Anna K. Liber" and "under the orders of" defendant District Attorney Porter. (Id., p. 26). Plaintiffs further contend that, in September 2010, Ms. Clark and "Baby Clark" were again "unlawfully" arrested and detained and that defendant Bellamy "conspired" with two other individuals in the purported "kidnapping and abduction." (Id., pp. 28, 30-31).

In the only remaining claim concerning Defendants, Count XIV, Plaintiffs contend that "[a]s of January 2014," "communication has been had" with defendants Olens, Owens, and Kemp regarding the previously-described events, but "they have refused their assistance and worked to further suppress and subjugate Plaintiffs."  (Id., p. 40).

Plaintiffs seek injunctive relief in the form of the "immediate[] release from detention" of Mr. Clark and the "immediate[] remov[al] from the State of Georgia records" of any suggestions of Plaintiffs' "U.S. citizenship" or "U.S. personhood." (Id., p. 43).  Plaintiffs also request $20 billion in damages.  (Id.).

## II. ARGUMENT AND CITATION TO AUTHORITY

### A.   Plaintiff Tamah Clark lacks standing to sue on behalf of Jason Clark and "Baby Clark."

Preliminarily, pursuant to 28 U.S.C. § 1654, parties "may plead and conduct their *own* cases personally or by counsel."  (emphasis added).  Only a licensed lawyer may represent another person in court.  See, e.g., Cortez v. FCI Sec., 2011 U.S. Dist. LEXIS 85837, *1 (S.D. Fla. Aug. 4, 2011).  While an individual may proceed pro se, a pro se plaintiff may not bring an action on behalf of other persons.  See, e.g., Whitehurst v. Wal-Mart, 306 Fed. Appx. 446, 448-449 (11th Cir. 2008).  See also, Wheat v. United States, 486 US. 153, 159 (1988)

("Regardless of his persuasive power, an advocate who is not a member of the bar may not represent clients (other than himself) in court."); Guajardo v. Luna, 432 F.2d 1324 (5th Cir. 1970) (finding court's rule that non-lawyers may not represent other people in litigation to be reasonable).

Here, plaintiff Tamah Clark is the only plaintiff to have signed the Complaint, and she purports to do so "on behalf of Plaintiffs."  (Doc. 3, p. 44). Ms. Clark is not an attorney, however, and she is unrepresented by counsel in this case.  She cannot, accordingly, bring this suit on behalf of the other named plaintiffs.  Any and all claims that plaintiff Tamah Clark attempts to raise on behalf of plaintiffs Jason Clark and "Baby Clark" should be dismissed.

**B. Plaintiffs have no private right of action under the UDHR.**

The majority of Plaintiffs' claims allege a "violation of the Universal Declaration of Human Rights (UDHR)."  (See generally, Doc. 3).  Such allegations fail to state a cognizable claim.  The UDHR does not provide a private cause of action and "does not of its own force impose obligations as a matter of international law."  See Sosa v. Alvarez- Machain, 542 U.S. 692, 734-35 (2004). See also, Lynch v. Lewis, 2014 U.S. Dist. LEXIS 63111, *6-7 (M.D. Ga. Mar. 24, 2014) (dismissing claims brought under the UDHR on grounds that it is non-binding and establishes no private right of action); Olusegun Okakekan Akinruntan

v. Holder, 2013 U.S. Dist. LEXIS 161721 (N.D. Ala. Sept. 30, 2013) *26 n. 6 (same).  As the UDHR is a non-binding resolution of the United Nations General Assembly, it has no bearing on whether Plaintiffs have suffered a violation of their rights under the United States Constitution or any other federal law and cannot form the basis of Plaintiffs' § 1983 claims in the instant case. See Sosa, 542 U.S. at 734 (rejecting FTCA claim alleging "arbitrary arrest" in violation of the UDHR); Graham v. Warder, 2012 U.S. Dist. LEXIS 130145, 9-10 (D.S.C. Aug. 8, 2012).

Article III of the United States Constitution provides this Court with federal question jurisdiction to hear claims that arise under the United States Constitution or the laws or treaties of the United States. The UDHR does not fall within these parameters.  Accordingly, Plaintiffs' numerous claims for violation of the UDHR must be dismissed.

**C. Most of Plaintiffs' § 1983 claims are time barred.**

The United States Supreme Court has concluded that, "based upon the legislative history of § 1983" and because claims under the statute "are best characterized as personal injury actions, . . . a State's personal injury statute of limitations should be applied to all § 1983 claims."  See Wilson v. Garcia, 471 U.S. 261, 280 (1985) (overruled in part on other grounds).  Accordingly, Plaintiff's claims for alleged constitutional violations, which are necessarily brought pursuant

to 42 U.S.C. § 1983, are subject to Georgia's two-year statute of limitations period for personal injury actions.  See id.; O.C.G.A. § 9-3-33; Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).  While state law governs the length of the limitations period and any tolling rules, federal law governs the "accrual date of a § 1983 cause of action."  See Wallace v. Kato, 549 U.S. 384, 388 (2007).  Accrual for a § 1983 action occurs when the wrongful act or omission results in damages, even though the full extent of the injury is not then known or predictable.  Id at 391.

Here, as Plaintiffs' own allegations make clear, most of their claims arise out of conduct which purportedly occurred more than two years prior to the filing of the Complaint on July 3, 2014.  (Doc. 3).  In particular, Counts I and II concern the alleged arrest of Mr. Clark in September 2009, his subsequent 11-month detention in county jail, and his entry of a guilty plea and sentencing in 2010.  (Id., pp. 6-12).  Counts VII, VIII, and IX are based on allegations surrounding the arrest and detention of Ms. Clark, as well as the placement of "Baby Clark" into the custody of child protective services, in August 2010.  (Id., pp. 17-28).  Finally, all of the alleged events underlying Counts X, XI, XII, and XIII occurred, according to Plaintiffs, within days of each other in September 2010.  (Id., pp. 28-40).

Because counts I, II, and VII through XIII, as well as the claims alleged in connection with all such counts, are based on conduct which Plaintiffs allege to

have occurred some four and five years prior to the filing of their lawsuit, the claims are time barred and should be dismissed.

### D. Plaintiffs' claims for money damages against the State of Georgia, GDC, and the individual defendants in their official capacities are barred.

The Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or when any monetary recovery would be paid from state funds.  See, e.g., Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Congress has not, moreover, overridden the protections of the Eleventh Amendment in the context of §1983 lawsuits.  Instead, the Supreme Court has repeatedly held that §1983 does not override a State's Eleventh Amendment immunity.  See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Quern v. Jordan, 440 U.S. 332, 342 (1979); Kentucky, 473 U.S. at 169 n. 17.  The State of Georgia has not consented to being sued under § 1983.  Indeed, the Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."   See Ga.

Const. Art. 1, Sec. II, Par. IX(f).  Plaintiffs' monetary claims against the State, GDC, and the individual Defendants in their official capacities are barred.[4]

### E. The State of Georgia, GDC, and the individual defendants in their official capacities are not "persons" within the meaning of § 1983.

Section 1983 permits plaintiffs to sue only "person[s]" who violate their civil rights.  See 42 U.S.C. § 1983.  Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and, as such, is "no different from a suit against the State itself."  See Will v., 491 U.S. at 65.  Indeed, federal courts have held explicitly that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983."  See Will, 491 U.S. at 71. Plaintiffs' claims against the State, GDC, and Defendants in their official capacities are not actionable under § 1983 and must be dismissed.

### F. Plaintiffs' claims are Heck-barred.

Under Heck v. Humphrey, a person convicted of an offense may not raise claims in a civil rights action if a judgment on the merits of those claims would

---

[4] This also applies to any claims for injunctive relief Plaintiffs bring against the State of Georgia and GDC.  While the Ex Parte Young, 209 U.S. 123 (1908), allows certain suits for injunctive relief for alleged violations of federal law, the exception applies only to "official capacity" claims, not to claims against the State.  See Summit Medical Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999) (Ex Parte Young exception apply to suits against individuals sued in their "official capacities.").  See also Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 n. 9 (11th Cir. 1995) (same).

affect the validity of his or her conviction or sentence, unless the conviction or sentence has been set aside. See Heck v. Humphrey, 512 U.S. 486-87 (1994). Heck will also bar a § 1983 claim if the claim attacks the factual basis for a conviction. See, e.g., Weaver v. Geiger, 294 Fed. Appx. 529, 533 (11th Cir. 2008).

Here, Plaintiffs acknowledge that the criminal proceedings against Mr. Clark, which underlie most of his claims, have concluded. Although less clear, the allegations suggest that criminal proceedings may have been instituted against Ms. Clark in connection with her purported arrests some four years ago and that they are similarly complete.[5] At least some of Plaintiffs' constitutional claims challenge the validity of the arrests underlying those convictions, the circumstances surrounding the arrests, the charges themselves, and, in the case of Mr. Clark, the criminal proceedings which resulted in his guilty plea. (See generally, Doc. 3). Indeed, Plaintiffs seek as relief the "immediate release" of Mr. Clark from GDC

---

[5] To the extent criminal charges against Ms. Clark are still pending, this Court still must abstain from hearing challenges to the state court proceedings pursuant to the Younger doctrine. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. See Younger v. Harris, 401 U.S. 37, 44-45 (1971). Under Younger, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. See, e.g., Middlesex County Ethics Comm. v. Garden State Bar Assn., 457 U.S. 423, 432 (1982). If a criminal case is still pending, all three factors supporting abstention are present, as state court criminal matters are of paramount state interest. Younger, 401 U.S. at 44.

custody.  (Doc. 3, p. 43).  A judgment on the merits of such claims would affect the validity of the underlying convictions and sentences.  Thus, to assert these claims, Plaintiffs must demonstrate that their convictions were declared invalid by a Georgia state court or a federal habeas corpus decision. They have not done so.

In sum, if Plaintiffs were to prevail in this case, it would call into question the legitimacy of Plaintiffs' criminal convictions, their factual basis, and the resulting detentions or incarceration.  Heck bars such a result.[6]

**G. Plaintiffs' complaint fails to state a § 1983 claim against defendants.**

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  See, e.g., Kyle K. v. Chapman, 208 F.3d 940, 942 (11th Cir. 2000). The court is not, however, required to accept a plaintiff's legal conclusions or draw the plaintiff's inferences.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 884 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief."  Iqbal, 556 U.S. at 884.

---

[6] While Heck may not bar Plaintiffs' claims of unconstitutional conditions of confinement or their claims based upon the placement of "Baby Clark" in protective custody, for the reasons discussed elsewhere herein, such claims are subject to dismissal on various other grounds.

### 1. Plaintiffs' conclusory allegations against Defendants fail to state a claim for relief as a matter of law.

Conclusory allegations cannot defeat a motion to dismiss.  Id.; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Notably, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quotations and citations omitted); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of actions, supported by mere conclusory statements, do not suffice").  Indeed, although legal conclusions may provide the *framework* of a complaint, they must be supported by well-pleaded factual allegations; mere conclusions "are not entitled to the assumption of truth," Iqbal, 556 U.S. at 664, and unwarranted deductions of fact are not accepted as true.  Sinaltrainal Isidro Segundo Gil v. Coca-Cola, Co., 578 F.3d 1252, 1266, 1268 (11th Cir. 2009).

Plaintiffs are not required to set forth detailed factual allegations, but they must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555-57 (requiring factual enhancement of allegations sufficient to cross the line between

possible and plausible).  Thus, a complaint is insufficient "if it tenders naked

assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678.

Conclusory allegations must be separated from the well-pleaded factual

allegations.  Twombly, 550 U.S. at 565-66.  For example, allegations that a

defendant "knew of, condoned, and willfully and maliciously agreed" to commit an

unlawful act is a mere conclusion entitled to no presumption of truth, as are

allegations that a defendant was a "principal architect" of an unlawful policy, or

that a defendant was "instrumental" in executing an unlawful policy.  Iqbal, 556

U.S. at 680-681; see also Twombly, 550 U.S. at 555 (allegation that a defendants

entered into "an unlawful agreement" is a legal conclusion).

　　　Here, Plaintiffs' contentions against Defendants are far too conclusory to

state a claim for relief against them.  The Complaint is replete with unsubstantiated

allegations of "unlawful" conduct, such as Plaintiffs' claims that they were subject

to "unlawful" arrests, "abducted," and were "arbitrarily" "deprived of due process"

and of property and that Mr. Clark was "coerced" to accept a plea in his criminal

case and is subject to "inhuman" conditions of confinement.  (See generally, Doc.

3).  Plaintiffs fail, however, to link Defendants, in a non-conclusory manner, to any

alleged violation or point to particular conduct on the part of any Defendants which

purportedly resulted in such "deprivations."  Instead, Plaintiffs seek to rely solely

on the positions or titles of Defendants in an (unsuccessful) effort to support their legal conclusions.

For example, Plaintiffs reference Judge Davis in only one paragraph of their lengthy Complaint, alleging only that he was the "presiding judicial officer" in plaintiff Mr. Clark's criminal case and was an "agent" of the "State of Georgia" at the time Mr. Clark's purportedly "coerced" plea was entered.  (Id., pp. 10-11). Similarly, Stanley Williams is referenced only once in an allegation that he has "supervisory authority" over Smith State Prison (id., p. 12), Gov. Deal only once in an allegation that he is "chief executive" of the State of Georgia (id., p. 14), Brian Bellamy only once in an allegation that he "conspired" with others concerning to placement of "Baby Clark" in protective custody (id., p. 30), D'Anna Liber only once in an allegation that "Baby Clark" was placed into child protective services "under [her] authority" (id., p. 26), and Brian Owens only twice in allegations that he has "indirect" supervisory authority over Smith State Prison and did not respond to an alleged "communication" complaining of the "injustices" set forth in the Complaint (id., pp. 12, 40).

Plaintiffs' reference to Secretary of State Kemp is likewise limited to their contention that he did not respond to a "communication" (id., p. 40), and allegations concerning Attorney General Olens include only a similar alleged

-15-

"failure to respond" to a communication and the contention that he was an "agent" of the State of Georgia at the time Mr. Clark entered his purportedly "coerced" plea (id., pp. 11, 40).  Finally, Plaintiffs' references to D.A. Porter, although slightly more frequent, consist entirely of their contentions that the allegedly "unlawful" detentions, arrests, and confiscations of property were undertaken "under the orders of" D.A. Porter.  (See generally, Doc. 3).

Plaintiffs' allegations are, in short, entirely devoid of the factual enhancement necessary to push them across the line from possible to plausible. Iqbal, 556 U.S. at 678. While it is true that Plaintiffs are not required to make detailed factual allegations against Defendants, they may not make broad statements that are wholly conclusory in order to subject them to the burdens of this litigation.  Id.; Twombly, 550 U.S. at 555-57.  That is, however, precisely what Plaintiffs are attempting to do.  Absent the necessary factual enhancement, Plaintiffs' allegations against Defendants should not be accepted as true, and their conclusory allegations fail to state any claim entitling them to relief.

### 2.  Plaintiffs' claims against Judge Davis are barred by absolute judicial immunity.

It is well established that judges acting within their judicial function are accorded absolute immunity from civil suits for money damages.  See, e.g., Stump v.

Starkman, 435 U.S. 349, 357 (1978); Jones v. Cannon, 174 F.3d 1271, 1281 (11th

Cir. 1999).  The doctrine of judicial immunity is rooted in the belief that it is "'of the

highest importance to the proper administration of justice that a judicial officer, in

exercising the authority vested in him, shall be free to act upon his own convictions,

without apprehension of personal consequences to himself.'"  See Mireles v. Waco,

502 U.S. 9, 10 (1991) (quoting Bradley v. Fisher, 80 U.S. 335 (1872)).  Absolute

judicial immunity applies as long as the alleged action was taken in the judge's

judicial capacity – i.e., it is a function normally performed by a judge – and the

judge did not act in the "clear absence of all jurisdiction."  See, e.g., id., 502 U.S. at

11-12; Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001).  A judge acts in the

"clear absence of all jurisdiction" only when she acts without subject-matter

jurisdiction.  See, e.g., Dykes v. Hosemann, 776 F.2d 942, 947-48 (11th Cir. 1985)

(en banc).    The doctrine of judicial immunity is not, moreover, rendered

inapplicable by allegations of bad faith or malice.  See, e.g., Mireles, 502 U.S. at 11-

12.  On the contrary, "[i]mmunity applies even when the judge is accused of acting

maliciously and corruptly," see Pierson v. Ray, 386 U.S. 547, 554 (1967), and even

if the judge's exercise of authority "is flawed by the commission of grave procedural

errors."  See Stump, 435 U.S. at 359.

Here, Plaintiffs mention of Judge Davis is limited to their contention that he was the "presiding judicial officer" over plaintiff Jason Clark's criminal case in Gwinnett Superior Court and was, in such capacity, an "agent" of the State when Mr. Clark was purportedly "coerced" into entering a guilty plea.  (Doc. 3, pp. 10-11).  Plaintiffs fail to point to any conduct of Judge Davis which is non-judicial in nature – indeed, they do not allege any conduct aside from him presiding over Mr. Clark's criminal case and accepting his guilty plea.  Nor does their description of Gwinnett Superior Court as a "foreign tribunal" establish a complete absence of all jurisdiction over Mr. Clark's criminal case.  See, e.g., Stump, 435 U.S. at 357.  On the contrary, Plaintiffs acknowledge that Mr. Clark was arrested for felony criminal offenses in Gwinnett County, and the Gwinnett Superior Court has jurisdiction over such a case.  See O.C.G.A. § 15-6-8; Ga. Const. Art. VI, Sec. IV, Par. I.[7]

The mere fact that Plaintiffs disagree with the handling or outcome of a criminal proceeding over which Judge Davis presided is not a basis upon which to sue him, although, as the complaint reveals, it is the sole basis of Plaintiffs' suit. Because absolute judicial immunity shields Judge Davis from suit based upon the

---

[7] Pursuant to the Constitution of the State of Georgia, Art. 6, § 4, ¶ I:  "The superior courts shall have jurisdiction in all cases, except as otherwise provided in this Constitution.  They shall have exclusive jurisdiction over trials in felony cases, except in the case of juvenile offenders as provided by law; in cases respecting title to land; in divorce cases; and in equity cases."

"conduct" alleged in Plaintiffs' Complaint, their claims for damages against him must be dismissed.

### 3. Plaintiffs' claims against D.A. Porter are barred by prosecutorial immunity.

Under both federal and state law, prosecutors enjoy absolute immunity from suit for actions arising from the performance of their prosecutorial duties. See, e.g., Imbler v. Pachtman, 424 U.S. 409, 427 (1976); Holsey v. Hind, 189 Ga. App. 656, 656-67 (1988). A prosecutor's absolute immunity extends to all acts performed pursuant to his prosecutorial functions, as prosecutors must be free to make decisions within their purview without being influenced by the risk of liability. See, e.g., Burns v. Reed, 500 U.S. 478, 490-92 (1991). Absolute immunity covers, for instance, a prosecutor's decisions concerning whether to prosecute an individual, as such decisions lie at the heart of the prosecutorial function. See, e.g., Neville v. Classic Gardens, 141 F. Supp. 1377, 1384 (S.D. Ga. 2001). This immunity leaves even "the genuinely wronged" without civil redress against a prosecutor.[8] Imbler, 424 U.S. at 427.

Plaintiffs allege that their rights were violated when they were "unlawfully arrested" and detained "under the orders of" defendant D.A. Porter, their property

---

[8] This argument is not a concession that Defendant Porter, or any Defendant, has in any way acted inappropriately.

was taken subsequent to the arrest, and "Baby Clark" was placed with county child protective services.  The acts giving rise to Plaintiffs' claims, in short, concern the initiation and pursuit of criminal charges against them and fall squarely within the scope of defendant Porter's role as a government advocate.  He is, accordingly, entitled to absolute immunity. Indeed, regardless of whether Porter acted with malicious intent or without probable cause, he is absolutely immune from suit for such alleged actions.  See Brown v. Jarvis, 2014 U.S. Dist. LEXIS 42112 (M.D. Fla. Mar. 28, 2014) (finding prosecutorial immunity from allegations that prosecutor violated her Fourth Amendment right to be free from unreasonable seizures by filing information and issuing a capias against plaintiff, resulting in her arrest); Jackson v. Capraun, 534 Fed. Appx. 854, 859 (11th Cir. 2013) ("[The prosecutor] is entitled to absolute immunity for initiating the prosecution even if he did it with malicious intent.")[9]

### 4. To the extent Plaintiffs' claims are not barred by the statute of limitations, they fail to allege a constitutional violation.

Plaintiffs bring only four claims – claims III, IV, V, and VI – which are not based on conduct allegedly occurring in 2009 and 2010 and thus not clearly barred

---

[9] Even if this Court finds that any of the conduct alleged in Plaintiffs' Complaint is not associated with defendant Porter's role as an advocate for the state, the claims based on such conduct are time-barred, *see supra*, and defendant Porter is nonetheless entitled to qualified immunity, as demonstrated *infra*. See Jones v. Cannon, 174 F.3d 1271, 1281-82 (11th Cir. 1999).

by the statute of limitations.  (See *supra*, Sec. II.C).  Specifically, in Counts III-VI, Mr. Clark contends that his incarceration at Smith State Prison, which he describes as "involuntary" and amounting to "enslavement," is characterized by "inhuman and degrading" conditions.  (Doc. 3, pp. 12-17).  He describes those conditions as including an "unsanitary environment, unbearable heat and/or freezing temperatures, inadequate clothing, insufficient meals, physical restraint, violent altercations, armed prisoners and prison personnel, [and] constant harassment" which includes "physical and verbal assault."  (Id., pp. 12-13).  He contends that these allegations are sufficient to establish violations of the Eighth and Ninth Amendments to the United States Constitution.  They are not.  Moreover, plaintiff Mr. Clark failed to exhaust his administrative remedies with respect to such claims, as required by the Prison Litigation Reform Act. For these reasons, such claims must be dismissed.

### a.  Mr. Clark failed to exhaust administrative remedies.

The Prison Litigation Reform Act of 1995 (PLRA) requires inmates to exhaust their administrative remedies *prior* to filing a lawsuit.   Pursuant to Congress' constitutional authority, the PLRA mandates the following:

> No action shall be brought with respect to prison conditions under
> Section 1979 of the revised statutes of the United States, 42 U.S.C. §
> 1983, or any other federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The plain language of the PLRA "makes exhaustion a precondition to filing an action in federal court."  See Leal v. Georgia Dept. of Corrections, 254 F.3d 1276, 1279 (11th Cir. 2001).  Indeed, the Eleventh Circuit has stated explicitly that, "until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court." Id. (quoting Freeman v. Francis, 196 F.3d 641, 643-44 (6th Cir. 1999)).

The exhaustion requirement, which is meant to allow prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," see Jones v. Bock, 549 U.S. 199, 204 (2007), demands compliance with an agency's deadlines and other critical procedural rules. See, e.g., Woodford v. Ngo, 548 U.S. 81, 84-85, 90-91 (2006).  Likewise, an inmate must pursue all available levels of administrative remedies, including appeals, in order to satisfy the exhaustion requirement. See, e.g., Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  Claims that have not been fully exhausted as required by the agency's rules cannot be brought into federal court and are to be dismissed. See, e.g., Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999).

### (1) *The Grievance Procedure at Smith*

All GDC prisons, including Smith, maintain a grievance process that is available to all inmates. (See Affidavit of Eyvette Cook, attached as Exhibit 1, at ¶¶ 3-4; and Attachment A thereto).  The grievance procedure consists of two steps: (1) the filing of an Original Grievance and (2) the filing of a Central Office Appeal. (Exh. 1, ¶ 8; Att. A, § VI. C).  If the Original Grievance is accepted by the Warden, it is processed and the complaint is investigated.  (Exh. 1, ¶ 14; Att. A. § VI.D.6).  The Grievance Coordinator will thereafter review the findings and submit a recommended response to the Warden, who then issues a written decision.  (Exh. 1, ¶ 15; Att. A. § VI.D.6.d, 6.e).  If dissatisfied with the Warden's decision, the inmate may appeal the decision to the Central Office.  (Exh. 1, ¶ 17; Att. A, § VI.D.5.f).  The Commissioner or his/her designee then has 100 calendar days after receipt of a Central Office Appeal to deliver a decision on the appeal to the inmate, thereby completing the grievance process.  (Exh. 1, ¶ 17; Att. A, § VI.E.7).

### (2) *Plaintiff's Failure to Exhaust*

As demonstrated by the attached affidavit and documentary evidence, plaintiff Mr. Clark failed to exhaust his administrative remedies regarding his conditions of confinement claims prior to filing suit in federal court.  Specifically, he filed two grievances while at Smith.  (Exh. 1, ¶ 23 and Att. C)  Both were filed

on December 6, 2013.  (Exh. 1, ¶¶ 24, 25 and Att. C-E).  One grievance was rejected for failing to comply with the governing grievance procedures, and the other was denied.  (Id.)  Plaintiff neither re-filed nor attempted to appeal the former, and he did not file an appeal with respect to the latter. (Id.)

The PLRA requires, and the Eleventh Circuit has made clear, that an inmate must not only file a grievance prior to hailing a defendant into federal court – he must *complete the grievance process* before doing so.  See, e.g., Smith v. Terry, 491 Fed. Appx. 81, 82-83 (11th Cir. 2012).  By failing to complete the grievance process prior to filing suit with respect to any complaints about Smith, much less the claims raised in his Complaint, Plaintiff failed "to affor[d] corrections officials time and opportunity to address [his] complaints internally before . . . the initiation of a federal case."  See Woodford, 548 U.S. at 93.  His Eighth Amendment conditions of confinement claims must, therefore, be dismissed.

### b. Plaintiffs fail to state an Eighth Amendment conditions of confinement claim.

In the context of an Eighth Amendment conditions of confinement claim, the Constitution does not mandate that prisons be comfortable; all that is required is that they be humane. See Rhodes v. Chapman, 452 U.S. 337, 349 (1981); Farmer v. Brennan, 511 U.S. 825, 832 (1994). Prison conditions rise to the level of an

Eighth Amendment violation only when a prisoner is deprived of "the minimal civilized measure of life's necessities."  See Rhodes, 452 U.S. at 347.  In this regard, the Amendment is only concerned with "deprivations of essential food, medical care, [] sanitation" or "other conditions intolerable for prison confinement." Id., at 348. When considering whether the alleged conditions have deprived a prisoner of "the civilized measures of life's necessities," courts examine the circumstances of each case, including the severity and duration of the alleged deprivations.  See, e.g., Barnett v. Bibb County Sheriff's Office, 2012 U.S. Dist. LEXIS 151814 (M.D. Ga. Oct. 23, 2012).  "All must add up to an 'extreme' or inhumane deprivation to be actionable." Id.

It is a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Farmer, 511 U.S. at 828.  The deliberate-indifference test has two elements, consisting of an objective and a subjective component.  Id., at 824.  To satisfy the objective, component, a plaintiff must show that the condition resulted in a "substantial risk of serious harm." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  For the subjective component, it must be shown that the prison official (1) had subjective knowledge of the risk of serious harm, and (2) nevertheless failed to respond reasonably to the risk. Farmer, 511 U.S. at 837.  "[T]he evidence must

demonstrate that with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).  Mistakes and even negligence on the part of prison officials are not enough for a constitutional violation.  See, e.g., Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

Here, Plaintiffs fail even to allege an objective substantial risk of serious harm from any prison condition.  They contend generally only that Mr. Clark's meals are "insufficient" and his clothing is "inadequate."  They make no allegation that Mr. Clark is deprived of food or clothing or, if so, to what extent; nor do they point to any example of such a deprivation.  Likewise, Plaintiffs claim generally that Smith State Prison is "unsanitary;" they fail, critically, however, to point to a single instance of an absence of sanitation affecting Mr. Clark.  Their conclusory claim of "unbearable" temperatures is similarly unsupported by any allegation of the actual temperatures at Smith or of the severity or duration of Mr. Clark's alleged exposure, if any, to extreme temperatures.   Finally, while Plaintiffs complain of alleged violence, harassment, and assault at Smith, they again fail to point to a single instance of any such conduct, much less an instance affecting Mr. Clark and which amounts to an extreme deprivation.  In sum, Plaintiffs' allegations amount, at most, to a claim that prison conditions at Smith are uncomfortable.  As

-26-

discussed, however, the Eighth Amendment does not mandate that prisons be comfortable. See Rhodes, 452 U.S. at 349; Chandler, 379 F.3d at 1289.

Moreover, even if Plaintiffs' allegations were enough to demonstrate that he faced a substantial risk of serious harm (which they clearly are not), Plaintiffs fail to allege that *any* Defendant – or, indeed, any jail official – was notified of his complaints, that any was actually aware of facts from which the inference of a substantial risk of serious harm could be drawn, or, perhaps more importantly, that any Defendant actually drew that inference. Plaintiffs' Eighth Amendment claims must, accordingly, be dismissed.

### c. Plaintiffs' Ninth Amendment Claims Fail.

Plaintiffs allege in Counts III, IV, and VI that their rights under the Ninth Amendment[10] were violated in connection with Mr. Clark's incarceration. (Doc. 3, pp. 12-17). The Ninth Amendment standing alone, however, confers no particular constitutionally guaranteed freedoms and adds no constitutional rights beyond those provided by other provisions of the Constitution. See, e.g., Hightower v. Olmstead, 959 F. Supp. 1549, 1558 (N.D. Ga. 1996) (collecting cases); Metz v. McKinley, 583 F. Supp. 683, 689 n.4 (S.D. Ga. 1984). For this reason, and because, as discussed

---

[10] The Ninth Amendment provides that, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., Amend. 9.

herein, Plaintiffs fail to state a claim against Defendants under any other constitutional provision, Plaintiffs' Ninth Amendment claims must be dismissed.

### d. Plaintiffs fail to state a claim of supervisory liability against any Defendant under § 1983.

In all of Plaintiffs' claims against Defendants, Plaintiffs seek to link Defendants to the alleged "wrongs" by pointing out that a Defendant has a "supervisory" role or that the alleged conduct occurred "under the orders" of a supervisory defendant.  (See infra, pp. 15-16).  Such allegations, particularly in light of the complete absence of any allegations of direct participation or involvement by any Defendant in any alleged unconstitutional conduct (see generally, Doc. 3), reveal that Plaintiffs seek to hold Defendants liable for the conduct of others.  A supervisor cannot, however, be held vicariously liable under § 1983 for the acts of his subordinates.  See, e.g., Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  Indeed, personal involvement in conduct amounting to a constitutional deprivation is the *sine qua non* of liability under 42 U.S.C. § 1983.  See, e.g., Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978).

Accordingly, to state a supervisory claim under § 1983, a plaintiff must show the existence of a causal connection between the actions of the supervisor and the alleged constitutional deprivation.  Id.  In the absence of direct participation in the

alleged deprivation, a party can establish this causal connection by showing that a supervisor was on notice of the need to correct unconstitutional conduct by "a history of widespread abuse" that is "obvious, flagrant, rampant and of continued duration."  See id.  "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003).  In addition, a plaintiff can show that a supervisor imposed an improper custom or policy that constituted deliberate indifference to constitutional rights.  See, e.g., Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

Plaintiffs' allegations not only fail to establish personal participation in any alleged unconstitutional conduct of any Defendant, they fail to demonstrate, or even permit an inference of, a causal connection of any sort between Defendants and any alleged constitutional violation.  Indeed, Plaintiffs make no allegation whatsoever of an obvious and flagrant "history of widespread" abuse concerning any of the claims in their Complaint; nor do they even contend that any Defendant established or implemented an "improper custom or policy" that amounted to deliberate indifference to the constitutional rights of detainees, inmates, or anyone, for that matter.  (See generally, Doc. 1)  Finally, Plaintiffs fail to allege that any

Defendant directed a subordinate to act unlawfully or knowingly failed to stop them from doing so.  While Plaintiffs make the conclusory claim that county employees or officials acted "under the orders of" D.A. Porter when arresting and detaining them, they fail to allege any facts demonstrating or permitting an inference that defendant Porter knowingly directed anyone to act unlawfully.

Plaintiffs cannot and do not establish a causal connection between Defendants and any alleged unconstitutional conduct and, accordingly, they fail to state a supervisory claim against any of them.

### H. Defendants are entitled to qualified immunity.

Qualified immunity protects governmental defendants sued in their individual capacities as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  See Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).  This immunity protects from suit all but the plainly incompetent or those who knowingly violate federal law.  See, e.g., Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  The relevant question is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant.  See, e.g., Anderson v. Creighton, 483 U.S. 635, 641.

The public official must first show that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  See, e.g., Vinyard, 311 F.3d at 1346.  The burden then shifts to the plaintiff to show that immunity is not appropriate.  See, e.g., id.  To carry that burden, the plaintiff must show that the right asserted was clearly established at the time the alleged violation occurred.  See, e.g., Hope v. Pelzer, 536 U.S. 730, 739 (2002).  Liability only attaches if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  See United States v. Lanier, 520 U.S. 259, 270 (1997).  A court need not decide, moreover, whether the plaintiff has alleged an actual constitutional or statutory violation before considering whether the unlawfulness of the alleged conduct was clearly established.  Id. at 818.

Here, Defendants were clearly acting within the scope of their discretionary authority as government or prison officials when dealing with Plaintiffs.  As discussed above, moreover, Defendants committed no constitutional violation. Regardless, even if this Court were to conclude otherwise, Defendants are entitled to qualified immunity, because Plaintiff cannot show that the law regarding Defendants' alleged actions (to the extent any action is even alleged) in connection with Plaintiffs' arrests, the subsequent criminal proceedings, incarceration, and retention of any property, the placement of "Baby Clark" with protective services

following Ms. Clark's arrests, or the prison "conditions" referenced in the Complaint was clearly established such that any action of any Defendant would amount to a violation of § 1983.  See Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (*en banc*) (only the U.S. Supreme Court or the Eleventh Circuit or the highest court of the state may "clearly establish" rights under federal law for courts in the Eleventh Circuit).   Therefore, Defendants are entitled to qualified immunity and Plaintiffs' claims against them should be dismissed.

## I.  Plaintiffs cannot obtain their request for injunctive relief.

The PLRA drastically altered the relief that may be awarded in prison litigation in a manner consistent with the Supreme Court's view that federal courts should have reduced involvement in state prison systems. See, e.g., Parrish v. Alabama Dep't of Corrections, 156 F.3d 1128, 1129 n.2 (11th Cir. 1998).  In this regard, the PLRA limits the authority of a court to enter prospective relief.[11] Specifically, the PLRA provides that prospective relief may not be granted unless the court finds that: 1) the relief is narrowly drawn; 2) the relief extends no further than necessary to correct the violation of a Federal right; and 3) the relief is the least intrusive means necessary to correct the violation of a Federal right. See 18

---

[11] The PLRA defines prospective relief as all relief other than compensatory monetary damages. 18 U.S.C. § 3626(g).

U.S.C. § 3626.  Plaintiffs' request for injunctive relief – in particular, their request that Mr. Clark be "immediately released" from GDC custody – fails to meet these requirements.   Accordingly, Plaintiffs' claims for injunctive relief must be dismissed.

### J.  Mr. Clark cannot obtain any request for damages in connection with his Eighth Amendment conditions of confinement claims.

"[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated."  Slicker v. Jackson, 215 F.3d 1225, 1229 (11th Cir. 2000) (internal citations and quotations omitted).  The PLRA clearly states that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of a physical injury."  See 42 U.S.C. § 1997e(e).  Furthermore, in order to state a claim for compensatory or punitive damages for alleged constitutional violations, an incarcerated plaintiff must demonstrate physical injuries that are more than *de minimis*.  See, e.g., Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-1313 (11th Cir. 2002).

The same is true with respect to nominal damages.  Under its plain language, § 1997e(e) bars *actions*, not modes of recovery.  This was recognized in Harris v.

Garner, where the court noted that 42 U.S.C. § 1997e(e) states that "*No* Federal Civil Action may be brought" and commented that, "'no' means no." 216 F.3d 970, 985 (11th Cir. 2000) (*en banc*) (internal citations omitted). The court went on to say that, "the clear and broad statutory language does not permit us to except any type of claims, including constitutional claims." Id. The statutory language of the PLRA also compels a finding that an action may not be maintained for nominal damages in the absence of a non-*de minimis* injury, as it defines nominal damages and punitive damages in the same manner – specifically, both are defined as prospective relief. See 18 U.S.C. § 3626(g)(7) (defining prospective relief as all relief other than compensatory monetary damages).

Here, plaintiff Mr. Clark fails to point to any physical injuries with respect to his Eighth Amendment conditions of confinement claims, much less demonstrate that any physical injury suffered is more than *de minimus*. (See generally, Doc. 3). The Eleventh Circuit has clearly held that no federal civil action, including those alleging constitutional claims, may be brought by an inmate unless the PLRA's physical injury requirement is met. Harris, 216 F.3d at 985. As Mr. Clark has not sufficiently alleged physical injury from his confinement, his § 1983 claims conditions of confinement claims must be dismissed.

### III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court

grant their Motion to Dismiss Plaintiffs' Complaint against them.

Respectfully submitted, this 29th day of September, 2014.

|  |  |
|---|---|
| SAMUEL S. OLENS<br>Attorney General | 551540 |
| KATHLEEN M. PACIOUS<br>Deputy Attorney General | 558555 |
| DEVON ORLAND<br>Senior Assistant Attorney General | 554301 |
| /s/ *Deborah Nolan Gore*<br>Assistant Attorney General | 437340 |

Counsel for Defendants Porter, Deal, Davis,
Olens, Kemp, Owens, Williams, Liber, Bellamy,
GDC, and State of Georgia

PLEASE SERVE:

Deborah Nolan Gore
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
dgore@law.ga.gov

## CERTIFICATE PURSUANT TO L.R. 7.1D

I hereby certify that this motion and brief conform to the requirements of

L.R. 5.1C.  This brief is written in 14 point New Times Roman font.

s/*Deborah Nolan Gore*    437340
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, I electronically filed **DEFENDANTS' BRIEF IN SUPPORT OF THEIR PRE-ANSWER MOTION TO DISMISS PLAINTIFFS' COMPLAINT** with the Clerk of Court using the CM/ECF system , which automatically sent e-mail notification of such filing to all attorneys of record.  In addition, I have this day sent a true and accurate service copy of the within and foregoing pleading via U.S. Mail with adequate postage to ensure delivery addressed as follows:

Tamah Jada Clark
6901-A N. 9th Ave. #429
Pensacola, Florida 32504-6638

/s/ Deborah Nolan Gore
Georgia Bar No. 437340

State Law Department
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone:  (404) 463-8850
Facsimile:  (404) 651-5304
dgore@law.ga.gov